Margaret Roennau, Appellee, v. Daniel Whitson, Appellant.

**HIGHWAYS:** Equality of Right—Vehicles and Coasters. The driv-
er of an ordinary carriage drawn by horses, and a party of
coasters with sleds, may lawfully make joint use of a highway
*for purposes of pleasure*, and neither possesses any superiority
of right over the other. Use of a country road for coasting
purposes does not constitute a public nuisance.

**NEGLIGENCE:** Failure to Maintain Lookout on Public Road. One
traveling on a public highway must maintain a reasonable look-
out for others lawfully thereon. Evidence reviewed, and held
to present a jury question on the issue of a driver's negligence,
resulting in injury to a party of coasters.

**NEGLIGENCE:** Imputed Negligence—Common Enterprise—Coast-
ing Party. Principle recognized that the mere showing that
several parties were engaged in a common enterprise is not
sufficient to charge one with the negligence of another, but that
it must further appear that the injured person had the right,
or assumed the right, to control the conduct of the negligent
person.

**NEGLIGENCE:** Contributory Negligence—Coasting Party. Evi-
dence reviewed, and held insufficient to show contributory neg-
ligence *per se* on the part of young people using a country road
for coasting purposes.

**HIGHWAYS:** Coasting as Criminal Offense. Coasting on the public
highway in the ordinary way does not constitute the offense of
"racing," within the meaning of Sec. 5039, Code, 1897.

**HIGHWAYS:** Law of Road—Applicability. The "law of the road"
—the law which requires persons in vehicles meeting on the
public road to turn to the right—is applicable to the driver of
a horse-drawn vehicle who meets coasters on the public road.
(Sec. 1569, Code Supp., 1913.)

**NEGLIGENCE:** Evidence—Sufficiency. One may not say that he
was under no obligation to exercise an act of care toward an-
other because he did not *know* of the presence of such other,
when the facts and circumstances would justify a finding that,
in the exercise of reasonable care, he *would have known* of such
presence.

NEGLIGENCE:     Last Clear Chance—When Doctrine Applicable.
8   The "last clear chance" doctrine is applicable whenever two par-
    ties are concurrently negligent, but one of the parties discovers
    the negligence of the other in such time that, by the exercise
    of reasonable care, he might have avoided the injury, and does
    not do so.

HIGHWAYS:  Nuisance Resulting from Reckless Use.  Principle rec-
9   ognized that the use of *any* vehicle upon a public highway may
    be of such nature as to constitute a nuisance.

*Appeal from Pottawattamie District Court.*—EARL PETERS,
Judge.

JANUARY 20, 1920.

ACTION at law to recover damages for personal injury.
Verdict and judgment for plaintiff, and the defendant ap-
peals.—*Affirmed.*

*Tinley, Mitchell, Pryor & Ross,* for appellant.

*W. H. Killpack* and *F. E. Northrop,* for appellee.

WEAVER, C. J.—The plaintiff was injured in a collision
upon a public road between a coasting sled on which she
was riding and a carriage driven by the defendant. The

1. HIGHWAYS:
equality of
right: vehi-
cles and
coasters.

highway at the point in question extends
east and west, and the hill over which it
is laid has its ascending slope to the east.
At this point, the roadway is narrowed
somewhat by a bank or cut on the north, but, as we under-
stand the record, the improved portion of the road is wide
enough to readily permit the passage of teams and vehicles
meeting there.  The hill or slope is quite long, but the
coasters do not appear to have been utilizing its entire
length.  There was a considerable body of snow on the
ground, the traveled track had become quite icy, and the
descending sleds acquired a high rate of speed.  The collision
took place in the evening, under circumstances substantially

as follows: The coasting party was made up of seven or eight young people, who were making use of one or more small sleds, carrying but one or two riders each, and a so-called "traveler," which consisted of two' narrow sleds, coupled tandem fashion, with a plank or board laid lengthwise over them. This vehicle would carry four or more riders. The appellant lived several miles from the place of the accident. He had been over this road a few times, but not in the winter season. On the evening in question, with a covered buggy and team of two horses, he had driven to the house of a neighbor, where his companion, a young woman, joined him for a ride. In the course of their drive, they reached the east and west road first mentioned, some distance west of the foot of the hill, and there turned eastward. It so happened that, about this time, two young men of the coasting party, with plaintiff and another young woman, took the traveler, and went east to the top of the first hill, for the purpose of making a trip down the western slope. They left three younger members of the party at the foot of the hill, with instructions to warn anyone who might chance to be traveling the road eastward, and thus avoid possible collision. The party with the traveler appears to have reached the top, or near the top, of the hill before the defendant and his companion, approaching from the west, were seen or heard by the watchers at the foot. When they were discovered, one of the three watchers ran eastward, shouting to the coasters, thinking he could stop them before they started down; but he was too late, and the party was on its way before the riders could receive the warning. At about the same time, defendant reached the place where the other watchers, a boy and girl, were stationed at the foot of the hill. Both these youngsters testify that each called out to the defendant that a sled was coming down the hill, but he did not heed them, and went on. Defendant and the young woman with him both say they

heard the boy and girl call out something, but they did not understand what was said.

It should also be said, with reference to the coasters, that they were loaded on the long and narrow traveler, one young man lying on his face, and managing the steering with his hands, and the other young man either lay or sat on the first, carrying an electric flashlight, pointing forward, while the two young women sat farther to the rear. The meeting took place at a distance not clearly shown to the east of the point where defendant passed the boy and girl. He does not seem to have realized the peril of the situation, until the coasting party was almost upon him. He then reined his team, or the team in its fright swerved of its own motion, to the right; and, as it turned, the "traveler," with its load of coasters, came in contact with a wheel of the carriage. The collision was not fully "head on," but its force was sufficient to break a spoke in the wheel of defendant's carriage and one of the runners on the coasting sled, which was upset, with its load. The defendant paused long enough to check his frightened team, and, after looking back at the coasters, drove on. In this collision, the plaintiff sustained very severe bruises of her person generally, and a comminuted fracture of her left upper arm, near the shoulder. Her injuries were followed by blood poisoning, necessitating somewhat protracted hospital treatment, as well as care, treatment, and nursing in her own home, and a resultant expenditure of considerable labor and expense.

A medical expert, testifying from an examination made at the time of the trial below, says that plaintiff's injuries have left her with only a limited use of her arm. He says the arm is "not nearly as good, and never will be as good as formerly; the deformity is great, and the motion very limited."

The negligence charged against defendant is his alleged

carelessness or recklessness in driving on up the hill, after having been warned of the situation by the watchers at the foot of the hill; also by the flashlight carried by the coasters, and the further warning given by their outcries as they started down the slope.    Negligence is also charged in defendant's alleged failure to turn to the right sufficiently to allow the coasters to pass in safety.    That the boy and girl at the foot of the hill did call out warnings to the defendant is not seriously questioned, but it is claimed for defendant that they were not given in a manner enabling him or his companion to understand their meaning, and that he could not and did not comprehend therefrom that a sled was descending the hill.    He admits that, as he proceeded, and before reaching the place of collision, he saw the light. He says, however, that he did not at first realize that the light was moving, and that, as soon as he did discover it to be in motion, he at once sought to turn out of the track; but, before he had fully accomplished his purpose, the "traveler" went quickly by.    The persons standing at the foot of the hill say that the light on the traveler was visible from the point of its starting, all the way down, and that the shouts of the riders were continuous and audible.    Those on the traveler unite in saying that they shouted an alarm to "clear the way," or words to that effect, from the time their descent began, and that the light was pointed forward, though, as we infer, with a downward slant, to illuminate the path for the benefit of the steerer.    The traveler was a narrow contrivance, the sleds and the connecting plank being only about 12 or 15 inches, at most, in width.    The trodden or icy path in the road had been broken and worn to some extent by auto cars, and the riders on this last unfortunate trip say that the traveler was kept with its right runner in the right-hand auto track, as they went down the hill.

While the foregoing is not a full statement of the testi-

mony, we have mentioned enough to illustrate the tendency
and general effect of the showing made by the contending
parties.   At the close of the evidence in chief for the plain-
tiff, defendant moved for a directed verdict in his favor, on
grounds the substance of which is:

(1) That there was no evidence to support a finding of
negligence on part of the defendant; and

(2) That plaintiff shows herself chargeable with con-
tributory negligence, as a matter of law.

The motion having been denied, the defendant intro-
duced his evidence, and thereafter renewed his motion for
a directed verdict.   This also was denied.   The jury re-
turned a verdict for plaintiff for $2,286.   Defendant ap-
peals.

I. Appellant's principal reliance for a reversal of the
judgment below is upon the two propositions assigned by
him for a directed verdict: the insufficiency of the evidence
to support a finding of negligence on his part, and the con-
clusiveness of the showing of plaintiff's own negligence.

While not in terms denying the lawfulness of the use
of a country highway for coasting purposes under ordinary
circumstances, appellant's argument, in many of its assump-
tions and inferences, seems grounded on the thought that,
as between the defendant, driving an ordinary wheeled car-
riage, drawn by horses, and the party of coasters, moving
over the same public road on a sled propelled by their own
weight, the superiority of right is with the former.   "Sure-
ly," say counsel, "the defendant had a right to drive up the
hill in the beaten or traveled way upon this public road."
This may be conceded; but it by no means answers or avoids
the plaintiff's complaint if, as a matter of law, she was also
clothed with a like right to come down the hill "in the
beaten or traveled way."   The right which any person has
to use the public road in going from place to place is a right
which he holds in common, as one of the public. . Each and

every person exercising a common or public right is bound to do so with reasonable regard to the safety of others lawfully claiming a like privilege. So far as the highway is concerned, the law recognizes no favorites in its use. The titled traveler, with his "coach and six" and outriders, has no higher or better right in the public road than has the patient squaw, with her pony, dragging the primitive travois which bears her load of blankets. And, barring only the reservation that the vehicle shall not be a kind destructive of the public use of the road, or otherwise constituting a nuisance, the law, in the absence of statute at least, does not close the road against any form or method of travel or transportation known to man. Nor does the law limit such public right to the use of the highway as a mere artery or conduit of business or commerce. More and more, as the years go by, are the public ways crowded with those who walk or ride or drive for the mere pleasure of it, or as a restful change from their labors, or as a matter of exercise, taken for the promotion of health. No practicable motive power has yet been developed which is, in itself, unlawful for use upon the highway. The subjection of steam, gas, and electricity to such uses is already an accomplished fact. Nor is gravity, that most universal and potent of all nature's forces, overlooked. The bicycle rider coasts down the hills, and the automobile driver does the same, and utilizes the momentum thus acquired to carry him far up the opposite slope; and in so doing, neither of them abuses his lawful right to the use of the road.

Nor is the right lost or forfeited because the use being made of the road is merely one of the movements in some amusement or sport. If, for example, a company of boys, playing "fox and hounds," lay out a course which takes pursuer and pursued along the traveled road, they are no less entitled to the rights, privileges, and protections which pertain to the public use of such road than would be theirs

if they were soberly making their way to school, or to a funeral. Speaking to this point, the Wisconsin court has said:

"It would seem to be reasonable that, if the person injured, whether an infant or an adult, was, in a proper sense, traveling on the sidewalk, it should not be an objection to his recovery that, at the same time, he was indulging in play or pastime not inconsistent with his being a traveler, also. A person traveling from place to place on a sidewalk is a traveler thereon. He is going somewhere. It makes no difference whether it is for business or for pleasure, or merely to gratify an idle curiosity." *Reed v. City of Madison,* 83 Wis. 171.

See, also, *Beaudin v. Bay City,* 136 Mich. 333 (99 N. W. 285); *Hutchinson v. Town of Concord,* 41 Vt. 271; *Faulkner v. City of Aurora,* 85 Ind. 130; *Lynch v. Public Service Corp.,* 82 N. J. L. 712 (83 Atl. 382); *Burford v. City of Grand Rapids,* 53 Mich. 98; *Jackson v. Castle,* 80 Me. 119.

Proceeding, then, on the theory that plaintiff and defendant were both lawfully in the road, the question of defendant's liability or nonliability for the injury to plaintiff becomes one for the application of the well-settled principles of the law of negligence. While it was defendant's right to travel the road along its beaten track, he must be held to have known the equal right of others to also use the same path in either direction, and was, therefore, charged with the duty of maintaining a reasonable outlook upon the way before him, to ascertain the approach of other travelers and, by a seasonable turn to the right, avoid any collision, the danger of which he saw, or, by the exercise of reasonable care, ought to have seen. True, a conclusion of negligence by either party would not necessarily or properly follow from the mere fact that the vehicles came into collision in

2. NEGLIGENCE: failure to maintain outlook on public road.

the darkness of night, there being no evidence of facts or
circumstances from which the jury could find that reason-
able care on the part of either would have prevented the
accident.   But the record is not void of significant attend-
ant circumstances and pertinent evidence to sustain a jury
finding that defendant was negligent in this respect.

Giving the testimony its most favorable construction
in support of the verdict returned, it was shown that de-
fendant was warned of the danger while still at the foot of
the hill; he saw the flashlight at a distance which, he con-
cedes, may have been 200 feet, and other evidence tends to
show it was plainly visible all the way down to the point
where the watchers were stationed; the coasters were mak-
ing loud outcries for a clear way, from the instant of their
start down the slope, cries which were audible at the foot
of the hill; and the darkness itself was a patent fact, call-
ing for caution on his part; and this is especially true if,
as he says, he was driving a fractious or "outlaw" team of
horses, liable to make trouble when frightened.   Neverthe-
less, he drove steadily ahead, occupying nearly, if not all,
the traveled track, up to nearly or quite the instant of col-
lision.   It is argued by counsel that he did yield the road,
in part at least; but the jury could well have found other-
wise.

The coasting sled, as we have seen, was a narrow con-
trivance, not more than 12 to 15 inches wide, and some 8
feet in length.   On this vehicle, the two young men were
lying at length, one over the other; while one of the young
women sat farther back, with her feet on the plank, and
holding up the feet of her companion, who sat behind her.
They descended the hill with the right sled runner in the
north or right-hand auto track.   Thus it will be seen, if
the testimony be true, that this narrow vehicle and its load
of riders were, at every point of its descent, well within
the north half of the beaten track; and, had the defendant

yielded one half of the track, there would have been no collision. That, under such corroboration of circumstances, the jury could properly find the defendant negligent is too clear for debate.

The remaining inquiry is whether the jury should have found the plaintiff guilty of contributory negligence, and therefore not entitled to damages. In the discussion of this proposition, appellant has argued that the members of the coasting party were engaged in a joint enterprise, and that the negligence of each is imputable to all. We hardly think that the facts shown justify an application of this rule. Plaintiff is not shown to have owned or had any possession or control of the coaster, or its use or management. She had not before taken any ride upon it, and the fair inference to be drawn from the situation is that she was taking this ride at the invitation of the young men who had the vehicle in charge. But, even if the rule contended for were to be applied, we think there was no such absence of care shown on part of any person connected with the party as to make the question of contributory negligence one of law. They did, at least, show some appreciation of their duty in the premises by stationing watchers at the foot of the hill, to give warning to any traveler chancing to approach from the west, and by displaying a light, visible the whole length of their course, and by shouts audible, apparently, to any traveler within the zone of danger; and this, to say the least, entitled plaintiff to go to the jury upon the question whether she, by her own fault, contributed to the injury of which she complains.

This case, in many of its essential features, has a close counterpart in *Lynch v. Public Service Corp.*, 82 N. J. L. 712 (83 Atl. 382). The facts in that case are, to an extent, quite parallel with those of the case at bar, except that the acci-

*Margin notes:*
3. NEGLIGENCE: imputed negligence: common enterprise: coasting.

4. NEGLIGENCE: contributory negligence: coasting party.

dent there considered took place upon the street of a large city, instead of a country road, and the vehicle with which the sled collided was a street car, instead of an ordinary carriage,—a difference tending very strongly in favor of the street car company, which was, nevertheless, held liable in damages. The circumstances, stated more in detail, were as follows:

Mountclair Avenue in the city of Newark runs east and west, and is crossed at the foot of a hill by Prospect Avenue, on which a street railway is operated. The hill on Mountclair Avenue affords a coasting place, on which young people gathered for the sport. As in the instant case, some made use of small sleds, while others united in using a long coaster. The momentum acquired in the descent was sufficient to carry the sleds to and across the street car track on Prospect, and, to avoid collision there, some of the boys would ordinarily be standing near the crossing, and give signals of some kind. On the occasion in question, a young man stood at the corner, and signaled the sleds to come down. After this was done, he discovered a car approaching, and signaled it to stop. His signal was not acted upon, and a collision occurred between the car and the large coaster, injuring the plaintiff, a girl of 13 years. On trial of an action brought against the car company for damages, the trial court held that no cause of action had been shown, and defeated the plaintiff. The theory of the trial court in so ruling was very like that of the appellant in this case, and, while not holding that coasting on a public street is, at all times and under all circumstances, a nuisance, it yet ruled that to indulge in such coasting without any brake or other device to stop the sled if occasion requires, is a nuisance, and that one indulging in such sport on the street is not in the rightful use of the public way. On appeal, that judgment was reversed, the court saying, among other things:

"We think the view taken of the case by the trial court was erroneous. The granting of the nonsuit at the close of the plaintiff's case could be justified only upon the ground that the act of the plaintiff was a public nuisance,—in fact, a nuisance *per se*, the existence or nonexistence of which is admittedly a question of law, purely. If the act was not a public nuisance, then whether or not the particular thing, act, omission, or use of property complained of was, in fact, a nuisance was to be determined by the jury. 21 Am. & Eng. Encyc. p. 621."

We cannot concede that coasting upon a public street is an illegal act, so as to constitute it a public nuisance. Public highways are intended for pleasure uses, as well as business uses; and it is difficult to see why a sled, coasting downhill, should be said to be a public nuisance, any more than a sleigh, drawn by horses, going down the same highway.

The matter of the coasting or sled riding in a public street has been a subject of decision in several jurisdictions; and we agree with the contention of the plaintiff in error that the most logical opinion upon the subject is that of Justice Cooley in the case of *Burford v. City of Grand Rapids,* 53 Mich. 98 (18 N. W. 571, 51 Am. Rep. 105), where he held that:

"Coasting does not necessarily interfere with the customary use of the street, and might be indulged in with no serious inconvenience to anyone, not only in many places in the country towns, but even within the limits of incorporated cities and villages. We are accustomed to make our public ways four rods in width, but it is not expected that the whole four rods will be occupied for travel; and it is possible to make use of parts of the public highway without encroaching at all upon the portions kept in repair and used for passage. * * * It could not be seriously contended that for the municipal authorities to permit coasting

upon such a street would be to license a public nuisance. On the contrary, as the sport is healthful and exhilarating, it seems sufficiently proper, if the street is not put to other public use, that this diversion be allowed, if not expressly sanctioned. The sport itself is not entirely foreign to the purposes for which public ways are established; for the use of these ways for pleasure riding is perfectly legitimate, and coasting is only pleasure riding in a series of short trips, repeated over the same road, not differing essentially from the riding in sleighs, of which so much is seen on the streets of northern cities, when suitable weather and proper conditions invite to their enjoyment."

There are other authorities on the question discussed, but further citations do not seem necessary. After considerable research, we find none out of harmony with those already mentioned, unless it be *McCarthy v. City of Portland*, 67 Me. 167, where the court, in deciding that a person racing horses on a city street has no right of action against the city for damages if his horse is injured by a defect in the street, goes far enough afield to suggest, by way of illustration, that a boy dragging his sled to school may lawfully mount it, and ride so far as a friendly hill in the road may carry him on his way to the schoolhouse; yet, if he so far forgets the strict rules of Puritan propriety as to stop at the foot of the hill and trudge back again to the top for another slide, for the pure fun of the thing, he becomes an outlaw or trespasser in the highway, bereft of the privileges and protections of an ordinary traveler.

The holding was bald dictum; and, so far as we have discovered, has never been followed elsewhere. Indeed, that court itself seems very soon to have ignored the precedent, by holding, in *Jackson v. Castle*, 80 Me. 119 (13 Atl. 49), that coasting in a public street even when "accompanied by boisterous conduct, is not necessarily unlawful."

II. That the use of a public road for such sport may be

a proper subject for legislative or police regulation need not be denied; but, as has been said by the Illinois court, the right to regulate necessarily assumes the lawfulness of that which is to be regulated. *City of Chicago v. Keefe,* 114 Ill. 222. Counsel have called our attention to Code Section 5039, which forbids racing upon the public highway, and makes it a misdemeanor to drive upon a highway in a manner likely to endanger the persons or lives of others. We are unable, however, to discover any application of this statute to the case before us. Under no fair construction of the language can the plaintiff be said to have been racing on the highway. And if we confine our attention to the last clause of the statute, imposing a penalty upon driving "in such manner as to endanger the persons or lives of others," we still find nothing to aid us at this juncture. It fixes no specific limit to the speed at which one may ride or drive. It becomes legally wrong only when indulged in at a time or place or in a manner which, under all the attendant circumstances, makes it a menace to the safety of others. The record in this case presents no facts on which to predicate a finding of that nature.

*5. HIGHWAYS: coasting as criminal offense.*

III. Counsel argue that the statute, Code Section 1569, prescribing the so-called law of the road, which makes it the duty of persons on horseback or vehicles meeting upon the highway to give one half the road by seasonably turning to the right, can have no application to a meeting on the road between the rider of a sled or coaster and a person who is operating a vehicle of any other description. We see no valid ground on which to draw this distinction, or to justify us in judicially engrafting upon the statute an exception which the legislature did not make. The statute makes no attempt to classify vehicles, or to include within its terms one or more to the exclusion of oth-

*6. HIGHWAYS: law of road: applicability.*

ers. We have held that a bicycle is to be considered a vehicle, and its rider entitled to the benefit of the law of the road (*Cook v. Fogarty,* 103 Iowa 500, 504) ; and, if we once concede that any particular vehicle may be lawfully used on a public road, its inclusion within the effect of the "law of the road" is clearly inevitable. It is quite possible that this may, at times, work an apparent hardship, as between a comparatively slow-moving vehicle and one which moves more swiftly or more silently, but such inconveniences or disadvantages are inevitable, unless we destroy the equality of right which makes the highway about the only place left where every man, no matter how humble, is the peer of every other man, no matter how exalted.. The universality of this right and use makes it incumbent on each person to exercise it with a reasonable degree of vigilance to avoid interference with others. This duty observed, collisions and accidents will be few, even though annoyances multiply with the multiplication of methods of transportation and locomotion.

The objection appellant makes to an application of the statutory law of the road in favor of a coaster descending a hill, and meeting an ordinary vehicle ascending, was considered by the Minnesota court in the recent case of *Terrill v. Virginia Brewing Co.,* 130 Minn. 46 (153 N. W. 136), and held not to be well taken. It was also there held not to be contributory negligence, as a matter of law, for coasters to descend a hill in a manner altogether similar to that which was adopted by the young people in the case at bar.

Counsel say that the failure of the defendant to turn to the right was not the proximate cause of the collision, and that, unless there is something in the record to show that he

7. NEGLIGENCE:
evidence:
sufficiency.

heard and heeded and understood the call made to him at the bottom of the hill, there is nothing to show that he knew that plaintiff and her associates were coming down

the hill.  This is a requirement which the law does not impose on the plaintiff.  She is not bound to show affirmatively that "he heard and heeded and understood" the warning. Practically no charge of negligence could ever be established under such rule, for the defendant would only have to say, "I did not hear.  I did not understand.  I did not heed. I did not know," to be immune from liability.  To sustain a finding of negligence, plaintiff need go no further than to show facts from which the jury may find that, notwithstanding his denials, the defendant did hear and understand, or that, as a reasonably prudent and intelligent person, he ought to have known and recognized the danger and avoided it.  If the jury believed the plaintiff and her witnesses, such a finding was quite inevitable.

In our judgment, the trial court did not err in refusing to rule, as a matter of law, that plaintiff had failed to make a case for the jury on the question of defendant's negligence, or in refusing to hold, as a matter of law, that she was guilty of contributory negligence.

IV. The trial court instructed the jury upon the rule of the last clear chance, and appellant assigns error thereon.

8. NEGLIGENCE: last clear chance: when doctrine applicable.

The evidence appears to us to warrant the instruction.  If, for the sake of the argument, it be assumed that plaintiff was negligent, or that the jury could have found her negligent in attempting the ride down the hill, it was also within the province of the jury, under the evidence, to find that defendant, before proceeding up the hill, was warned that the sled was coming, and could see the light carried by the coasters, and hear their shouts as they came, giving him ample time to swing out of the road, or at least to yield the half of the beaten path, thereby giving the coaster, following the north auto wheel track, room to pass in safety,—all of which could have been found from the testimony.  It is difficult to conceive a more typical case

calling for consideration of the "last clear chance." To
permit such safe passage, defendant was not required to
abandon the beaten path for even a slight turn to the right:
sufficient to bring the left wheels of his carriage to or slight-
ly past the median line of the path would have met all re-
quirements, and the accident would not have occurred. The
assumption of fact by counsel that neither party discovered
the other until it was too late to avoid the collision, and
that, therefore, the doctrine of the last clear chance is in-
applicable, is not borne out by the record. It may be true
that defendant did not fully awake to a realization of the
peril until too late; but, if he received timely warning from
the watchers at the foot of the hill, or saw or heard that
which ought to have led him, as a man of ordinary prudence,
to turn aside sufficiently to prevent a collision, and did not
do so, he was negligent; and it is no defense to plaintiff's
claim to say that she was originally negligent in attempt-
ing the ride.

Counsel question the decision found in *Bruggeman v. Il-
linois Cent. R. Co.*, 147 Iowa 187, as lacking clearness in
statement of the doctrine of the last clear chance and the
principle upon which it is founded. We think it unnecessary
to re-enter that field at this time. The opinion in the cited
case was prepared with much care by the late Mr. Justice
Deemer, after this question had been argued and re-argued
by eminent counsel. We are satisfied that it is not open to
the criticism now made upon it. Its language is unambigu-
ous, and the principle there approved has since been repeat-
edly re-affirmed. The latest case re-announcing the rule is
*James v. Iowa Cent. R. Co.*, 183 Iowa 231, which goes to the
full extent of the holding in the *Bruggeman* case. No good
reason is suggested for discrediting these authorities.

Much of appellant's argument is directed to matters of
testimony and conclusions and inferences drawn therefrom;
but, in view of our finding that a case was made for the jury,

9. HIGHWAYS: nuisance resulting from reckless use.

we think it unnecessary to prolong this opinion for their consideration. In view of some features of the arguments of counsel, it ought to be said that nothing in this opinion is to be construed as denying appellant's proposition that the use upon the public way of any kind of vehicle may be so abused by the reckless and careless conduct of the driver as to create a nuisance, and that, for such act, the plea of public or common right of travel will afford no defense. But the question whether the evidence develops any such wrong is, under all ordinary circumstances, one of fact for the jury alone. We are quite certain, however, that, upon the record before us, it may not be said that any such abuse of the privileges of the highway has been shown, as a matter of law.

We find no prejudicial error, and the judgment of the trial court is—*Affirmed.*

LADD, GAYNOR, and STEVENS, JJ., concur.