(72 Misc. Rep. 416.)

PEOPLE ex rel. CAVANAGH v. WALDO, Police Com'r, et al.

(Supreme Court, Special Term, Kings County. June, 1911.)

1. MUNICIPAL CORPORATIONS (§ 721*)—CONTROL OF STREETS—STATUTORY PROVISIONS.

Laws 1910, c. 681, adding to Greater New York Charter (Laws 1901, c. 466) section 612b, giving the commissioner of parks of the boroughs of Brooklyn and Queens the exclusive authority to exclude bicycles and motor vehicles from the main driveway of Ocean boulevard in the borough of Brooklyn from Twenty-Second avenue to King's highway, is valid.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 721.*]

2. MUNICIPAL CORPORATIONS (§ 721*)—CONTROL OF STREETS—VIOLATION OF ORDINANCE.

Where, pursuant to Greater New York Charter (Laws 1901, c. 466) § 612b, as added by Laws 1910, c. 681, the park commission passes an ordinance restricting the use of the main drive of Ocean boulevard in the borough of Brooklyn from Twenty-Second avenue to King's highway, to horses and light carriages and excluding other vehicles including bicycles and motor vehicles, one who drives an automobile along such a boulevard is liable to arrest under section 610, making the violation of a park ordinance a misdemeanor.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 721.*]

Proceedings by the People, on the relation of C. Stewart Cavanagh, against Rhinelander Waldo, as Police Commissioner, and others, for the discharge of relator on writ of habeas corpus. Writ dismissed.

T. Ellett Hodgskin, for relator.

John F. Clarke, Dist. Atty., Peter P. Smith, Asst. Dist. Atty., and James D. Bell, Asst. Corp. Counsel, for respondents.

KAPPER, J. [1] The practice of controlling and regulating traffic in the public streets and places of large cities has become the accepted fact. It found its inception in the problem of facilitating the progress of two moving vehicles, which the law of physics told us at our earliest understanding could not occupy the same spot at the same time. This control and regulation has taken various forms, sometimes according to the discretion of the administrative officers seeking to subserve the public interests, but always in pursuance of legis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lative authority. In the public interest it has also been found desirable, convenient, or necessary to impose restrictions upon the indiscriminate use of the public streets by wayfarers, whether on foot or in vehicles. Side paths have been constructed for the exclusive use of bicycles, speedways have been laid out for the speeding of harness horses, saddle paths have been made for the sole use of saddle horses, business vehicles such as trucks and vans and delivery wagons have been prohibited from using the driveways in parks and in some cases boulevards and parkways, sidewalks are and from time immemorial have been reserved for pedestrians exclusively, custom and highway laws have required moving vehicles to keep to the right of the road and to make turns one way or the other on meeting, and, generally, in these and in other instances, the subject has been treated and administered by the authorities always, as stated, duly empowered by legislative sanction.

Here, the Legislature, by chapter 681 of the Laws of 1910, adding section 612b to the charter of the city of New York (Laws 1901, c. 466), authorized the commissioner of parks of the boroughs of Brooklyn and Queens, "in his discretion, by rules and regulations, to restrict the use and occupation of the main drive of Ocean boulevard, in the borough of Brooklyn, Twenty-Second avenue to King's highway, to horses and light carriages, and to exclude therefrom vehicles of all other kinds, including bicycles and motor vehicles."

In pursuance of this power the park commission, on April 26, 1911, ordained that:

"The use and occupation of the main drive of Ocean boulevard in the borough of Brooklyn, from Twenty-Second avenue to King's highway, is hereby restricted to horses and light carriages. Vehicles of all other kinds, including bicycles and motor vehicles, are hereby excluded therefrom. The superintendent of parks of the boroughs of Brooklyn and Queens is hereby directed to see that the foregoing rule and regulation is enforced."

[2] The relator, on the 6th day of June, 1911, in violation of this ordinance, drove an automobile along Ocean boulevard, on the main driveway, between Twenty-Second avenue and King's highway. He was arrested and arraigned before a city magistrate on a charge of violating section 610 of the New York city charter, which makes the violation of a park ordinance a misdemeanor. The relator obtained a writ of habeas corpus, claiming his arrest to be illegal upon the ground that the legislation conferring authority on the park commissioner to so restrict the use of Ocean boulevard "deprives the relator herein of the equal protection of the laws," and is an "attempted diversion of public property to the benefit of private individuals," and is therefore unconstitutional.

Ocean boulevard is about five miles in length, running north and south, and so laid out as to provide sidewalks on both the extreme westerly and easterly sides for pedestrians. Adjoining the sidewalk on the east there is a saddle path for equestrians; next, a path for bicycles; next, the main driveway in question; next, another bicycle path; and then the roadway now devoted to automobile travel; and, lastly, the westerly sidewalk. It is admitted that the roadway now afforded to automobile use is 25 feet in width, and that the exclusion

from the main drive is but for a part of its length. The boulevard was created by chapter 861 of the Laws of 1869. Its opening, laying out, and improvement were vested in the park department, which, by section 11 of the act, was given "the exclusive charge and management" over it; and to that department was delegated the power to "make and enforce proper rules and regulations for the public use thereof."

The authority of the park department to regulate travel upon the boulevard seems plenary, and, coupled with the present express legislative sanction to limit the use of it to vehicles of the character named, the action of the park commissioner is undoubtedly the result of ample power and authority; and in my opinion the act neither diverts public property to the benefit of private individuals, nor does it come within the condemnation of the fourteenth amendment of the federal Constitution, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws"—these, as before stated, being the two grounds of attack upon the validity of the legislation. No person who wishes to drive a horse and light carriage is excluded from this main driveway. All such are duly privileged. Those in other vehicles are required to use another portion of the same boulevard, separated, it is true, from the portion set apart for horses and light carriages, but still duly provided. They are not even kept from the same street, as has been done in some jurisdictions. See cases infra.

Where every member of the public has an equal right to share in the privileges granted in the street, there is no appropriation of it for a private use. Johnson v. City of New York, 186 N. Y. 146, 78 N. E. 715, 116 Am. St. Rep. 545.

When the Legislature or municipal authorities under legislative sanction limit the use of a street to particular vehicles drawn by a particular or peculiar power, at the same time allowing all persons to use the street freely with vehicles of the character specified and "should close the road to every other kind of travel and use, it would, nevertheless, continue to be a highway, and devoted to a public use." People v. Kerr, 27 N. Y. 192, 194. It was also said in the case cited:

"So far as the existing public rights in these streets are concerned, such as the right of passage and travel over them as common highways, a little reflection will show that the Legislature has supreme control over them. When no private interests are involved or invaded, the Legislature may close a highway and relinquish altogether its use by the public, or it may *regulate such use or restrict it to peculiar vehicles or to the use of particular motive power.* It may change one kind of public use into another, so long as the property continues to be devoted to public use. What belongs to the public may be controlled and disposed of in any way which the public agents see fit. \* \* \* As long as the use to which a highway or any other public property or right is to be applied or transferred is a public use, it is a matter of discretion in the Legislature to permit its application or transfer, and the people must question their action elsewhere than in the courts."

In People ex rel. Van Norder v. Village of Saratoga Springs, 90 App. Div. 555, 557, 86 N. Y. Supp. 445, 446, the court say:

"The Legislature has the supreme control of the streets and public highways and has the right to regulate and restrict their use."

Furthermore, the act may well find support as a police regulation. The Legislature could say that vehicular traffic on this boulevard might be of such a character as to require, in the interests of public safety, a limitation of the use of a portion of it for horses and light carriages and the exclusion of bicycles and motor vehicles from that particular portion, especially so when other portions of the same boulevard, namely, those parts adjacent to but which are not of the main driveway itself, furnish means of travel to the excluded vehicles.

Any law which preserves in any way the public safety by regulating the use of highways is valid if it affects all of the class. 8 Cyc. 1052, citing Cicero Lumber Co. v. Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155, where a law appropriating certain streets to the use of carriages only was upheld.

It is of some significance, too, that this is not the first legislative declaration regarding the subject-matter of precluding automobiles from roads desired for the exclusive use of horses and light carriages. The motor vehicle law (Laws 1904, c. 538), which the court in People ex rel. Hainer v. Keeper of Prison, 121 App. Div. 650, 106 N. Y. Supp. 314, said was passed "in the interest of automobiles," while denying to local authorities the power to exclude motor vehicles from the free use of highways, adds this important limitation, "except such driveway, speedway or road as has been or may be expressly set apart by law for the exclusive use of horses and light carriages." Whether this be regarded as limiting the setting apart of the road by any particular municipal authority, or was an expectation of future legislative action, is immaterial, in view of the fact that specific legislation was passed enabling the park commissioner to enact the ordinance here in question.

The case of Peace v. McAdoo, 110 App. Div. 13, 96 N. Y. Supp. 1039, does not seem to me to be in conflict with the foregoing views. It was there held that the provisions of the charter of the city of New York authorizing the police commissioner to "regulate" traffic on the streets of the city did not confer a power to "prohibit" traffic; but that the Legislature could have delegated to the police commissioner the power to prohibit traffic was clearly laid down as a legal proposition.

Legislation of the character of that here involved has been upheld in Maine (State v. Mayo, 106 Me. 62, 75 Atl. 295, 26 L. R. A. (N. S.) 502), Massachusetts (Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848, 127 Am. St. Rep. 513), and California (Ex parte Berry, 147 Cal. 523, 82 Pac. 44, 109 Am. St. Rep. 160).

It follows from what has been said that the act authorizing the exclusion by the park commissioner, in his discretion, of bicycles and motor vehicles from the main driveway of Ocean boulevard, was valid legislation, and the writ must therefore be dismissed and the relator remanded. Settle order on two days' notice.

Writ dismissed.