JOHN CLAUSEN, JR., PROSECUTOR, PLAINTIFF IN ERROR, v. GEORGE DE MEDINA, RECORDER OF THE TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON, AND THE BOULEVARD COMMISSIONERS OF THE COUNTY OF HUDSON, DEFENDANTS IN ERROR.

Submitted July 10, 1911—Decided November 20, 1911.

The Hudson county boulevard was constructed pursuant to "An act to authorize the board of chosen freeholders of any of the several counties of this state to lay out, construct, improve and maintain a public road therein" (*Gen. Stat.*, p. 2882), and a supplement thereto of 1891 (*Pamph. L.* 1891, p. 79), by the board of freeholders of that county. A board of boulevard commissioners controlling said road under *Pamph. L.* 1898, p. 173, enacted the following rule 9: "In addition to the accepted and common rules of the road governing public travel in this state, the following regulations must be observed: No automobile, locomobile, truck, cart or other vehicle used for business purposes will be allowed upon the road except to deliver and receive its loading, and in that case must leave the boulevard east and west at the nearest traveled cross street. Neither will a steam roller be allowed upon the road at any time unless a permit has first been obtained from the boulevard commissioners. Penalty for each offence, $5.00. And provided, however, that

nothing herein shall prevent the use of said road to business wagons weighing, loaded, not more than 500 pounds on each wheel, at all times when used solely for pleasure driving." *Held,* that this rule was beyond the powers conferred upon the board by the above legislation.

On error to the Supreme Court, whose opinion is reported in 51 *Vroom* 634.

For the plaintiff in error, *Collins & Corbin.*

For the defendants in error, *John Griffin.*

The opinion of the court was delivered by

VOORHEES, J.   The Supreme Court sustained the conviction of the plaintiff in error, had before the recorder of Bergen township, Hudson county, upon a complaint made that "being the driver of a heavy farm wagon and driving for business, and not for pleasure, on the Hudson county boulevard, and not being on said boulevard to deliver or receive its loading and being ordered to leave and drive off said boulevard at the nearest cross street refused" to do so contrary to section 9 of the rules adopted by the boulevard commission (controlling the road under chapter 106, laws of 1898, page 173).

The proof was that when arrested he was driving a one-horse farm wagon loaded with twenty empty barrels; returning to his home near Hackensack, whence he had in the earlier part of the day taken lettuce in the barrels and delivered it at the market.

The rule alleged to have been violated reads as follows:

"In addition to the accepted and common rules of the road governing public travel in this state, the following regulations must be observed: No automobile, locomobile, truck, cart or other vehicle used for business purposes will be allowed upon the road except to deliver and receive its loading, and in that case must leave the boulevard east and west at the nearest traveled cross street. Neither will a steam roller be allowed upon the road at any time unless a permit has first been obtained from the boulevard commissioners. Penalty for each

offence, $5.00. And provided, however, that nothing herein shall prevent the use of said road to business wagons weighing, loaded, not more than 500 pounds on each wheel, at all times when used solely for pleasure driving."

Two reasons are put forth for the reversal of the conviction; the first that rule 9 is not authorized by law, and secondly, that the rule is unreasonable. We must look to the legislative sanction for the power of the commissioners to promulgate rule 9.

In 1888, an act entitled "An act to authorize the board of chosen freeholders of any of the several counties of this state to lay out, construct, improve and maintain a public road therein" (*Pamph. L.* 1888, *p.* 397; *Gen. Stat., p.* 2882) was passed. It authorized the construction and maintenance of a public road, investing the board of chosen freeholders "with all the rights and powers necessary and expedient to lay out, open, construct, improve and maintain such public road."

The road thus authorized, when constructed, was to be a public highway, having included therein any road or street already laid out (section 3), and by a supplement to this act (*Pamph. L.* 1891, *p.* 79, § 3), it was further enacted that "said roads, when constructed and open for travel thereon, shall, from one end to the other thereof, be deemed and taken to be public roads, and shall always be and remain open as such, but the same and the travel thereon shall be subject to such rules and regulations in relation thereto, and to limit and prevent the driving or travel thereon of loaded or heavy trucks, wagons or carts, as the said board may have adopted or shall adopt from time to time, and for the violation of which such board may make or prescribe reasonable penalties, not exceeding $10 in any case."

In these enactments, we have no difficulty in recognizing a right of control conferred upon the county of the entire road, and the wresting of that control from the several municipalities, through which the parts of old roads ran which were incorporated in the new boulevard. But this control was intended to be control as contradistinguished from impairment of the ordinary use by the public of a highway. Now, rule 9

deals generally with regulation as commonly understood and also with the limiting and preventing of travel. Justification for the latter is indeed found in the act of 1891, but the limitation and prevention of travel are confined to "driving or traveling thereon of loaded or heavy trucks, wagons or carts." The road is a common highway, presumably for all people of the state. The statute is in derogation of this common right, and hence will be construed strictly, and clear authority for the enactment of the rule must be found. *State, Breninger, pros.,* v. *Belvidere,* 15 *Vroom* 350.

The by-law, however, forbade the use of the road "by any vehicles used for business purposes except business wagons weighing, loaded, not more than five hundred pounds on each wheel when used solely for pleasure driving." The test for exclusion required by this rule is the use in which the vehicle is employed, while the test prescribed by the statute is weight. The evident legislative intent is, that those vehicles which by reason of their weight tend to injure the roadway, may be interdicted. There appears no purpose in the statute to discriminate between conveyances when used for business purposes and when for pleasure driving, yet such is the effect of the rule which must be justified by the statute.

It excludes all vehicles used for business purposes, whether light or heavy, loaded or unloaded, but permits a loaded wagon within a certain weight, if driven for pleasure only. The criterion is not that furnished by the act, but one arbitrarily adopted by the board, and hence beyond the powers conferred.

The judgment of the Supreme Court will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 11.