DELAWARE, LACKAWANNA AND WESTERN RAILROAD
     COMPANY v. BOARD OF PUBLIC UTILITY COMMIS-
     SIONERS.

ERIE RAILROAD v. BOARD OF PUBLIC UTILITY COM-
                    MISSIONERS.

NEW JERSEY AND NEW YORK RAILROAD COMPANY v.
     BOARD OF PUBLIC UTILITY COMMISSIONERS.

NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD
     COMPANY v. BOARD OF PUBLIC UTILITY COMMIS-
     SIONERS.

Argued February Term, 1912—Decided October 2, 1912.

1.  An order of the board of public utility commissioners requiring
    railroad corporations supplying drinking water on trains to pas-
    sengers, to supply therewith a sanitary drinking glass or indi-
    vidual drinking cups, is not an unreasonable regulation under the
    powers committed to that board by the provisions of chapter 195
    of the laws of 1911.  *Pamph. L.,* p. 374.
2.  An order of the board of public utility commissioners requiring
    railroad corporations supplying drinking water to passengers on
    their trains, to supply therewith a sanitary drinking glass or indi-
    vidual drinking cups does not result in depriving the railroad com-
    panies comprised within the terms of the order, of the equal pro-
    tection of the law, and is not in conflict with the constitutional
    inhibition.

On *certiorari.*

Before Justices TRENCHARD, PARKER and MINTURN.

For the prosecutors, *William M. Stillman, George S.
Hobart* and *Collins & Corbin.*

For the defendant, *Frank H. Sommer.*

The opinion of the court was delivered by

MINTURN, J. The writs of *certiorari* allowed in these cases bring up for review an order of the public utility commissioners, directing the various railroad companies to provide and keep on all passenger trains operated by them within the state, upon which drinking water is furnished for public use, individual drinking cups, or a glass in sanitary condition which may be procured by the passenger without cost. The cases were argued together and have been considered jointly since it was conceded that there are no differentiating features in the order which call for special consideration in their application to any of the railroad companies concerned in the prosecution of the writs. Anterior to the passage of the act which presents the basis for this order of the commissioners, the common carriers of the state were not regulated by statutory law from a sanitary point of view, in the quality or character of the service they rendered to the public; and hence the furnishing of water for drinking purposes to the traveling public was like the furnishing of a smoking car or a dining car, a matter left to the individual judgment of the roads, as their self interest from a business and competitive point of view would seem to warrant. In such a situation it was deemed advisable for many years to furnish to the traveling public not only drinking water but a common drinking glass from which the public were impliedly invited to drink the water thus supplied. The progress of sanitary science, notably within the last decade, which we are judicially bound to notice, as an essential factor in the question at issue, demonstrated that the indiscriminate use of a common drinking cup might be instrumental in spreading contagious diseases or foul bodily ailments; and scientific and sanitary preventative methods were quite generally instituted to eliminate this as a common source of contagion, the substitutionary remedy being a cup carried by the passengers or a cup of cheap material on sale in the stations and on the trains at a nominal cost. In this situation two facts stood out prominently—the one that the carrier itself had for years recognized that not only the carrying of the water, but also its necessary complement, the

supplying of the utensil from which to drink it, were reasonable, adequate and proper service to furnish the traveling public as a part of the service of transportation; but, also, that a new and correct method of ministering to this public want and necessity had become necessary, and this necessity was made manifest and a remedy made mandatory by legislation. Accordingly, chapter 171 of the laws of 1911 (*Pamph. L., p.* 257) is entitled "An act to restrict the use of common drinking cups and to prevent the communicating of infectious diseases." Its first section declares that "the use of the common drinking cup, an undoubted source of communication of infectious diseases, is hereby prohibited in all public places within the commonwealth." This act embodies in concrete legislative mandate the accepted result of scientific sanitary investigation and must be considered therefore as establishing a state public policy upon the subject.

It was followed at the same session by chapter 195 of the laws of 1911, which established "The Board of Public Utility Commissioners." Among the powers delegated to that board by this act was that contained in section 17, *mutatis mutandis,* as follows, that "it shall have power, after hearing upon notice, by order in writing, to require every public utility to furnish adequate and proper service, and to keep and maintain its property and equipment in such condition as to enable it to do so;" and also that contained in the eighteenth section of the act, as follows: "No public utility shall provide or maintain any service that is improper or inadequate, or withhold or refuse any service which can reasonably be demanded and furnished when ordered by said board." In the light of this administrative power the commissioners, after due notice to the railroads concerned, on July 31st, 1911, made the following finding of facts: "That the several railroad companies operating within the State of New Jersey which do not provide facilities for the use of drinking water by passengers upon the passenger cars of the trains operated by them on which water is furnished for drinking purposes, fail to furnish adequate and proper service," and it was then ordered that the companies "provide and keep on all passenger trains operated

by them, respectively, within the State of New Jersey, on which water is furnished for drinking purposes, inexpensive individual drinking cups or glasses in sanitary condition that may be had by any passenger without cost to such passenger, solely for the purpose of drinking water on such trains, on request made to the conductor or brakeman of a train or to the porter of any car thereof." This order these prosecutors assert is illegal, unconstitutional and unreasonable, for the reasons we shall now consider. It is contended that the furnishing of adequate and proper service does not include the furnishing of drinking cups, and that the requirement of the board is equivalent to an order requiring the companies to supply cigars and candy to the passengers, and in effect that it deprives the companies of their property without due process of law. It will be observed that the order of the board applies only to companies which furnish their passengers with drinking water, and does not extend to companies that fail to supply water to passengers. The question, therefore, is delimited to the inquiry, whether companies supplying drinking water without furnishing utensils to the public from which to drink it can be said to be supplying "adequate and proper service," as required by law; and whether the order of the board requiring the companies to furnish such utensils is tantamount to a taking of property without due process. The simile suggested of an order requiring the presentation of cigars or candy to passengers loses its force when it is recalled that such articles are in the category of luxuries, and by no stretch of imagination can be brought within the terms or spirit of a legal mandate intended only to secure the supplying of the necessities of travel under a reasonable demand for "adequate and proper service" to the traveling public. A more apt similitude would seem to be the supplying of a dining service upon trains without the accompaniment of forks, knives or spoons. But in any event, it cannot be overlooked in construing this phrase that the companies themselves, as we have intimated, have put a practical and reasonable construction upon it in every instance heretofore where drinking water was supplied upon their trains, by supplying its necessary and ordi-

nary concomitant, the drinking glass or cup. The argument therefore must be that the requirement is not unreasonable if it be limited as heretofore practiced by the companies to one common cup or glass, but becomes unlawful when this requirement is exceeded *pro bono publico,* or for any other adequate legislative reason. Legislation of this character, in the interest of the public health, is clearly within the police power of the state, and invariably has been supported by both federal and state adjudications upon the principle that where property and employment are effected with a public use the business in which it is used is subject to legislative control in all respects necessary to protect the public against danger, injustice and oppression. *Georgia R. & Bkg. Co.* v. *Smith,* 128 *U. S.* 174; *Jacquelin* v. *Erie Railroad,* 3 *Robb.* 432.

Since the words "due process of law," as used in the federal constitution, have been held to mean nothing more than the application of the law of the land to a given class of cases *(Murray* v. *Hoboken Land and Improvement Co.,* 18 *How.* (*U. S.*) 272), and since such application is secured if the law in question operate on all alike, and does not subject the individual to an arbitrary exercise of the powers of government (*Giozza* v. *Tiernan,* 149 *U. S.* 774), it is difficult to perceive how this sanitary regulation made general and mandatory, by a state statute to all of a given class, can be said to be violative of the constitutional guarantee. Precedents for a similar exercise of legislative power are not wanting. A. quarantine requirement that the vessel examined in the interest of public health shall bear the cost of such examination has been upheld as reasonable. *Morgan Steamship Co.* v. *Louisiana Board of Health,* 118 *U. S.* 455.

The compulsory examination of railroad engineers for color blindness has been held to be properly chargeable against the railroad companies. *Nashville, &c., Railroad Co.* v. *Alabama,* 128 *U. S.* 96.

The expenses of a railroad commission have been held to be a reasonable charge against railroad corporations. *Charlotte, &c., Railway Co.* v. *Gibbes,* 142 *U. S.* 386; *New York* v. *Squire,* 145 *Id.* 175.

And so as to the expenses of mining inspectors against mine owners. *Consolidated Coal Co.* v. *Illinois,* 185 *U. S.* 203.

In like manner the owners of tenement-houses have been held to be properly chargeable with improvements required in the interest of public health. *Health Department* v. *Trinity Church,* 145 *N. Y.* 32.

And in Georgia a statute requiring railroad companies to supply drinking water to passengers, and providing for indictment and fine for neglect of such duty, was sustained as a valid exercise of legislative power, except so far as it undertook to inflict punishment other than fine. *Southern Railroad Co.* v. *State,* 5 *Am. & Eng. Ann. Cas.* 411.

Nor is it manifest in what respect these prosecutors can be said to be deprived of the equal protection of the law under the constitutional guarantee. For the purposes of taxation, it is the settled law of this state that railroad and canal property, which it was assumed possessed by its peculiar use characteristics differentiating it from the general property of the citizens, might be segregated and separately assessed and taxed without violating the constitutional mandate. *State Board of Assessors* v. *Central Railroad,* 19 *Vroom* 146.

"Due process of law," within the meaning of the fourteenth amendment to the federal constitution, is secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government. *Yick Wo* v. *Hopkins,* 118 *U. S.* 356; *Giozza* v. *Tiernan, supra.*

The constitutional requirement is satisfied when the act under consideration, said the Supreme Court of Tennessee, "embraces all persons who are or may come into like situation and circumstances." *Stratton* v. *Morris,* 89 *Tenn.* 497.

And so the federal Supreme Court has held that the test is that the statute be general, embracing all persons under substantially like circumstances and not an arbitrary exercise of power. *Jones* v. *Brim,* 165 *U. S.* 180; *Lowe* v. *Kansas,* 163 *Id.* 81; *Duncan* v. *Missouri,* 152 *Id.* 377; *Hayes* v. *Missouri,* 120 *Id.* 68; *Allen* v. *Wyckoff,* 19 *Vroom* 90.

Nor does the case cited by the defendant (*Clausen* v. *De-Medina,* 53 *Vroom* 491) militate against this general prin-

ciple. That adjudication was based upon what the Court of Errors and Appeals deemed to be an unreasonable discrimination instituted by the boulevard commissioners of Hudson county against the use of the county highway by certain vehicles other than pleasure vehicles, which power of arbitrary discrimination was held to be not within the purview of the powers conferred by the act upon the commissioners. No such question is presented here. Nor are we impressed with the argument that the effect of the enforcement of the order *sub judice* will be to violate the provisions of chapter 171 of the laws of 1911, *ubi supra,* which prevents the use of a common drinking cup in public places. The two requirements are not inconsistent since the order in question does not require the companies to use a common drinking cup, but insists upon such cup being kept in sanitary condition if in use by the companies. The common drinking cup contemplated by the statute is one which is in indiscriminate individual use by passengers, without any intervening service by the railroad to render its use sanitary and safe. The object of the requirement *sub judice* was to eliminate this common use of the cup by the exercise of sanitary precautions, insuring, as far as human care and foresight will permit, the elimination of the dangers lurking in the common receptacle, rendering it in fact no longer common, as that term was intended to be employed in the statute.

We perceive, therefore, nothing unreasonable or illegal in the order under review. It leaves to the prosecutors the right to determine upon what trains they shall supply drinking water, and whether it shall be supplied in a sanitary cup or glass, or in inexpensive individual drinking cups; and such a requirement is in accord with the spirit and letter of the legislation upon which it is based.

The order will be affirmed.