## SMALLWOOD v. DISTRICT OF COLUMBIA.

(Court of Appeals of District of Columbia. Submitted December 8, 1926. Decided January 3, 1927.)

No. 4498.

**1. District of Columbia ⬅➡22—Regulation excluding commercial vehicles equipped with solid tires from certain streets held authorized (District of Columbia Traffic Act, § 6 [b]).**

District of Columbia Traffic Act, § 6, subd. (b), being 43 Stat. 1121, authorizing director of traffic to make reasonable regulations for control of traffic, *held* to authorize regulation excluding commercial vehicles equipped with solid tires on certain streets, in view of sections 9 (a), 14 (43 Stat. 1123, 1125).

**2. District of Columbia ⬅➡22—Regulation excluding commercial vehicles with solid tires from certain streets held reasonable (District of Columbia Traffic Act, § 6 [b]).**

Regulation by director of traffic, under District of Columbia Traffic Act, § 6, subd. (b), being 43 Stat. 1121, excluding commercial vehicles equipped with solid tires from certain streets, *held* reasonable.

**3. Evidence ⬅➡14—It is common knowledge that traffic is frequently congested in even widest streets of large cities.**

It is common knowledge that in any large city, and especially in city of Washington, traffic is so congested that even widest streets are practically filled with motor cars.

**4. Constitutional law ⬅➡77—District of Columbia ⬅➡22—Regulation excluding commercial vehicles from streets, and imposing punishment, held not invalid, as attempt by ministerial officer to define and punish crime (District of Columbia Traffic Act, §§ 2, 6 [b]).**

Regulation by director of traffic under District of Columbia Traffic Act, § 2, and section 6, subd. (b), being 43 Stat. 1119, 1121, excluding commercial vehicles from certain streets and imposing a fine or imprisonment therefor, *held* not invalid, as being an attempt by ministerial officer to define crime and prescribe punishment, since provision in act itself for reasonable penalties constitutes legislative declaration that violation of regulation would amount to criminal offense.

Hatfield, Acting Associate Justice, dissenting.

Eston Smallwood was convicted of a violation of the traffic regulations of the District of Columbia and he brings error. Affirmed.

R. J. Whiteford and H. S. Barger, both of Washington, D. C., for plaintiff in error.

F. H. Stephens and E. W. Thomas, both of Washington, D. C., for the District of Columbia.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and HATFIELD, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. This is a writ of error to the police court of the District of Columbia to review a decision of that court adjudging plaintiff in error guilty of a violation of subsection (a–c) of section 13, article XI, of the Traffic Regulations of the District, and imposing a fine of $10 or, in lieu of the payment thereof, 10 days in jail.

The information charged that February 24, 1926, plaintiff in error operated a commercial vehicle equipped with solid tires on Sixteenth street, between H street and Colorado avenue, other than for the purpose of making deliveries or loading. Evidence introduced on behalf of plaintiff in error tended to show that commercial vehicles equipped with solid tires really are heavy trucks for use in hauling heavy loads, and that, if they are excluded from that part of Sixteenth street mentioned in the regulation, considerable inconvenience and some additional expense will result. Evidence for the District, on the other hand, tended to show that the inconvenience would be negligible.

On March 3, 1925, Congress passed the "District of Columbia Traffic Act." 43 Stat. 1119. Section 6 (a) authorized the commissioners of the District to appoint a director of traffic. Section 6 (b) authorized such director "to make reasonable regulations with respect to brakes, horns, lights, mufflers, and other equipment, the speed and parking of vehicles, the registration of motor vehicles, the issuance and revocation of operators' permits, and such other regulations with respect to the control of traffic in the District, not in conflict with any law of the United States, as are deemed advisable, which regulations shall remain in force until revoked by the director with the approval of the commissioners, and (2) to prescribe within the limitations of this act reasonable penalties of fine, or imprisonment not to exceed ten days in lieu of or in addition to any fine, for the violation of any such regulation." The foregoing regulations were promulgated under the supposed authority of this section 6 (b).

Section 9 (a) of this Traffic Act provides that no motor vehicle shall be operated upon any public highway in the District at a rate of speed greater than 22 miles per hour, "except in such outlying districts, and on such arterial highways, as the director may designate." Section 14 of the same act provides: "For the purpose of expediting motor-vehicle traffic the director is authorized and directed to designate and establish as arterial highways or boulevards such public highways as he deems advisable, to provide for the equipment of any such highway or boulevard with such traffic-control lights and other devices for the proper regulation of traffic thereon, as may be appropriated for by the Congress from time to time."

That the regulation and control of traffic in cities of the size of Washington has become a serious problem, by reason of the increased use of motor vehicles, no one would deny. The safety and convenience of pedestrians, motorists, and others using the streets call for regulations tending to expedite traffic and reduce congestion. To these conditions may be attributed the District of Columbia Traffic Act of 1925. That act, as we have seen, provides for a director of traffic, and authorizes him, among other things, to make reasonable regulations for "the speed and parking of vehicles, the registration of motor vehicles," and the issuance and revocation of operators' permits. It will be observed that the speed and parking of all vehicles is to be regulated by the director, who also is to have charge of the registration of "motor vehicles." The director then is authorized to make "such other regulations with respect to the control of traffic in the District not in conflict with any law of the United States as are deemed advisable."

In Village of Euclid, Ohio, v. Ambler Realty Co., decided in the Supreme Court of the United States November 22, 1926 (47 S. Ct. 114, 71 L. Ed. ——), but not yet [officially] reported, a municipal ordinance excluding from residential districts apartment houses, business houses, retail stores and shops, and other like establishments, was held to be a valid exercise of authority. The court said: "Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable."

In People v. Waldo, 72 Misc. Rep. 416, 131 N. Y. S. 307, there was sustained a municipal ordinance restricting the use of a certain boulevard to horses and light carriages and excluding other vehicles, including bicycles and motor vehicles; the court saying: "The practice of controlling and regulating traffic in the public streets and places of large cities has become the accepted fact. It found its inception in the problem of facilitating the progress of two moving vehicles, which the law of physics told us at our earliest understanding could not occupy the same spot at the same time. * * * Any law which preserves in any way the public safety by regulating the use of highways is valid if it affects all of the class."

In State v. Mayo, 106 Me. 62, 75 A. 295, 26 L. R. A. (N. S.) 502, 20 Ann. Cas. 512, the court sustained an ordinance, passed under legislative authority, closing to the use of automobiles certain public streets. The ground of the decision was that the use of public streets for the purposes of travel, as well as all personal and property rights, is not an absolute and unqualified right, but subject to be limited and controlled by the sovereign authority, "whenever necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people." Answering the contention that the ordinance applied to automobiles only, and not to all other vehicles, the court said: "That contention cannot prevail. This same objection to the constitutionality of statutes and ordinances regulating the use of automobiles, that they apply only to one particular class of vehicles, has been repeatedly raised in recent cases and as repeatedly decided to be without merit." As sustaining this decision the court cited Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923, and Christy v. Elliott, 216 Ill. 31, 74 N. E. 1035, 1 L. R. A. (N. S.) 215, 108 Am. St. Rep. 196, 3 Ann. Cas. 487.

In Com. v. Kingsbury, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513, the court sustained regulations, promulgated under legislative authority, which prohibited the passage of automobiles over certain streets of the town, saying: "It seems too plain for discussion that, with a view to the safety of the public, the Legislature may pass laws regulating the speed of such machines when running upon highways. The same principle is applicable to a determination by the Legislature that there are some streets and ways on which such machines should not be allowed at all. * * * No one has a right to use the streets and public places as he chooses, without regard to the safety of other persons who are rightly there. In choosing his vehicle, every one must consider whether it is of a kind which will put in peril those using the streets differently in a reasonable way." The court then cited and quoted from a decision in the same court, rendered 60 years earlier, in which was sustained on ordinance of the city of Boston, prescribing the streets on which certain omnibuses might be run and excluding them from other streets. In the earlier opinion it was said: "To take a strong case: Suppose the proprietor of the omnibuses from Roxbury should deem it expedient to propel his carriages by steam power, passing through Washington street, at a rapid rate, would it not be a lawful and proper regulation for the mayor and aldermen to prohibit the using of Washington street by vehicles propelled by steam power? We cannot doubt that it would be."

In Carranzo v. District of Columbia, 56 App. D. C. 118, 10 F. (2d) 983, we sustained a regulation of this District designating particular stands for push-cart venders and imposing penalties for violations, saying: "The record discloses that, prior to the promulgation of these regulations, there were from 65 to 100 push-cart venders in the business of vending fruits and vegetables within the congested section; that to permit such a comparatively large number of these push-cart venders to ply their trade generally throughout the most congested part of the city might have a tendency seriously to interfere with traffic and be a menace to the safety of the general public may not be doubted. Recognizing this, the commissioners located within this area five stands, and restricted the activities of such venders to those locations. On the record before us, we would not be justified in saying that this was an unreasonable exercise of power; that is, that it amounted to prohibition, rather than regulation."

In Croson v. District of Columbia, 55 App. D. C. 122, 2 F. (2d) 924, we ruled that the general powers conferred on the commissioners of the District of Columbia empowered them to make police regulations providing for the issuance of permits to automobile drivers and imposing penalties for failure by drivers to exhibit their permits. Attention also was directed in that case to the plenary power of Congress as the Legislature of the District of Columbia. See, also, White v. District of Columbia, 55 App. D. C. 197, 4 F. (2d) 163.

[1, 2] Is the regulation here involved authorized by the Traffic Act and, if so, is it rea-

sonable? Section 9 (a) limits generally the speed of motor vehicles to 22 miles per hour, except in outlying districts "and on such arterial highways as the director may designate." Under section 14, "For the purpose of expediting motor vehicle traffic the director is authorized and *directed* to designate and establish as arterial highways or boulevards such public highways as he deems advisable." (Italics ours.)

The director, it will be observed, not only is authorized, but "directed," for the purpose of expediting "motor vehicle traffic," to establish arterial highways or boulevards. Such was the mandate of Congress. And when Congress, in section 6 (b), authorized the director to make "such other regulations with respect to the control of traffic in the District," it must be assumed that this grant of authority was commensurate with the scope and purpose of the act. In other words, Congress intended to authorize, and did authorize, the director to make reasonable regulations to carry out the provisions of the act. One obvious purpose of the act was to provide for greater speed on these arterial highways or boulevards. It is apparent, however, that if heavy trucks, which plaintiff in error himself testified are hard to control in traffic, and whose speed is specifically limited by the traffic regulations, were permitted to be operated generally on these arterial highways, the purpose of establishing such highways would be frustrated.

It may be observed that, if the director of traffic was without authority to promulgate the regulations here involved, he also would lack authority to prevent the general use of arterial highways by push carts and other slow-moving vehicles, although such use would frustrate the intent of Congress. [3] The suggestion that the width of Sixteenth street renders such a regulation unnecessary is without merit. It is common knowledge that in any large city, and especially in the city of Washington, where so many employees of the government use motor vehicles, traffic frequently is so congested that even the widest streets are practically filled with motor cars. It is idle to contend that slow-moving vehicles on arterial highways would not seriously interfere with and retard traffic authorized to move from two to three times their speed.

[4] Finally, it is contended that the regulation in question is invalid, because it is an attempt by ministerial officers both to define a crime and prescribe a punishment. Section 2 of the Traffic Act provides that "the term 'this act' includes all lawful regulations issued thereunder by the commissioners." We already have ruled that section 6 (b) authorized the promulgation of these regulations, which therefore, by the provisions of section 2, are made a part of the Act. Congress, in section 6 (b), provided for "reasonable penalties of fine, or imprisonment not to exceed ten days in lieu of or in addition to any fine, for the violation of any such regulation." Clearly this was a legislative declaration that a violation of the regulations would amount to a criminal offense. Section 22 of article XVI of the Traffic Regulations, applicable here, prescribes a penalty of not less than $1 or more than $300, or imprisonment of not more than 10 days—a reasonable penalty "of fine or imprisonment." In Smithson v. District of Columbia, 42 App. D. C. 184, Smithson had been convicted under an information charging him with a violation of the building regulations of the District, and sentenced to pay a fine or in default to serve a term in jail. The act of Congress under which the regulations were promulgated authorized the commissioners to make and enforce building regulations, and this court held that the imposition of a penalty was included within the power of enforcement given the commissioners. The court quoted the rule stated by Judge Dillon in his treatise on the law of Municipal Corporations (volume 2 [5th Ed.] § 610) as follows: "Since an ordinance or by-law without a penalty would be nugatory, municipal corporations have an implied power to provide for their enforcement by reasonable and proper fines against those who break them. So, the right to make by-laws given to the corporation, without any express grant of power, the incidental right to enforce them by reasonable pecuniary penalties."

Plaintiff in error cites Clausen v. De Medina, 82 N. J. Law, 491, 81 A. 924. In that case the statute authorized a regulation to limit and prevent the driving or travel on a certain boulevard of loaded or heavy trucks, wagons, or carts. The regulation promulgated prohibited any "automobile, locomobile, truck, cart or other vehicle used for business purposes" from using the boulevard. In condemning the regulation the court said: "The test for exclusion required by this rule is the use in which the vehicle is employed, while the test prescribed by the statute is weight. The evident legislative intent is that those vehicles which by reason of their weight tend to injure the roadway, may be interdicted. There appears no purpose in the statute to discriminate between

conveyances when used for business purposes and when for pleasure driving, yet such is the effect of the rule which must be justified by the statute." The difference between that case and this is so obvious as to require no further discussion.

We have examined and found without merit other contentions of plaintiff in error. It results that the judgment must be affirmed, with costs.

Affirmed.

HATFIELD, Acting Associate Justice (dissenting). I regret that I am unable to concur in the majority opinion.

The streets in the District of Columbia have been dedicated to the use of the public; and the legal title thereto is vested in the Congress of the United States, as trustee for the public. The power of regulation and control thereof is, therefore, vested in the Congress only, and may be exercised directly, or through such corporations, associations, or individuals as the Congress may by law prescribe. The authority of the Congress in this regard is substantially the same as that vested in the Legislatures of the several states. Smith v. Corporation of Washington, 61 U. S. (20 How.) 135, 147, 15 L. Ed. 858; Oppenheimer v. Philadelphia, B. & W. R. Co., 39 App. D. C. 253.

The purpose of the establishment and improvement of streets is for the use of the public in general, and all persons have equal rights to use them for purposes of ordinary travel in all proper and reasonable ways, having due regard for the rights of others. This includes the right to travel thereon throughout their length and on any part thereof, subject to such reasonable and proper regulations and restrictions as the Congress or the state Legislature, as the case may be, may directly or indirectly provide. 13 R. C. L. §§ 209, 210; 29 C. J. §§ 409, 410, and cases therein cited.

The authority to establish and vacate streets, and the regulation and control of traffic thereon is usually delegated to municipalities by the Legislatures of the several states. Under and by virtue of such delegation of powers, municipal corporations may adopt and enforce reasonable regulations in respect to the operation of vehicles for the purpose of preserving the safety and the rights of the general public, and to protect the streets from injury. Ordinances providing for "one way streets," limiting the rate of speed at which vehicles may be driven, requiring the use of lights on motor and other vehicles and regulating the parking thereof, and many other regulations of a similar character have been held to be valid. It has been held in some jurisdictions that the exclusion by municipal ordinance of vehicles from the streets carrying loads of excessive weight was a valid exercise of the delegated power of regulation of streets and traffic thereon. Commonwealth v. Mulhall, 162 Mass. 496, 39 N. E. 183, 44 Am. St. Rep. 387, and cases cited therein.

Legislative enactments delegating police powers to municipal corporations must be strictly construed. Such powers are generally held to be limited to such as are expressly conferred and to such as may be necessary to carry into effect those expressly granted. Accordingly, if it is uncertain, from a fair construction of a statute upon which the municipal corporation relies for its authority, whether such power has been delegated to it, its existence must be denied. 19 R. C. L. § 108, and cases therein cited; 28 Cyc. 265, 692, et seq.; Baltimore & Ohio Railroad Co. v. Fitzgerald, 35 App. D. C. 116, 119; Coombe v. United States, 55 App. D. C. 190, 3 F. (2d) 714.

The delegation of authority to municipal corporations to regulate and control traffic does not include the power to deny to the public or any part thereof the right to reasonable use of the streets. The power to regulate and control traffic does not include the power to prohibit or exclude, except in cases of immediate and temporary emergency. 19 R. C. L. § 108; 13 R. C. L. § 210; 28 Cyc. 910; Peace v. McAdoo, 110 App. Div. 13, 96 N. Y. S. 1039; 2 Elliott, Roads & Streets (3d Ed.) § 1113; Crane v. District of Columbia, 53 App. D. C. 159, 289 F. 557; Clausen v. De Medina, 82 N. J. Law, 491, 81 A. 924; Chicago Dock & Canal Co. v. Garrity, 115 Ill. 155, 3 N. E. 448.

In the case of Brownlow et al. v. O'Donoghue Bros., Inc., 51 App. D. C. 114, 276 F. 636, 22 A. L. R. 939, this court, in discussing the authority of the commissioners of the District of Columbia to make reasonable regulations for the use of driveways across sidewalks, said:

"No doubt the commissioners have the right to make reasonable regulations for the use of driveways across sidewalks, * * * and that their decision in that regard will not be disturbed if it has any reasonable basis in the facts relating to the matter. * * * *But regulation is one thing, and prohibition is another.*" (Italics not quoted.)

This case is referred to for the purpose

only of calling attention to the distinction noted therein between "regulation" and "prohibition."

The Congress has the power, within constitutional limitations, and within the proper exercise of the police power, and for the purpose of making the streets in the District of Columbia safe and convenient for public travel, to restrict the use of the same, and, for such purpose and within the limitations referred to, may prohibit certain vehicles from using certain prescribed streets for general traffic purposes. This power may be delegated to the director of traffic or other named officers of the government of the District of Columbia. 13 R. C. L. § 215; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155.

With these preliminary observations, the precise questions which seem to me to require the consideration of the court may now be stated. The pertinent part of section 13, article XI, paragraph (a–c), of the Traffic Regulations of the District of Columbia, reads as follows:

"Commercial vehicles equipped with solid tires and horse-drawn vehicles shall not be operated on the following streets except for the purpose of making deliveries or loading; and for such purposes such vehicles shall enter and leave at the nearest intersection to such delivery or loading point, provided, however, that *vehicles using said highways for the purpose herein permitted* shall at all times obey the Parking Regulations in force thereon: Sixteenth street between H street and Colorado avenue, N. W. * * *" (Italics not quoted.)

The plaintiff in error was tried and convicted in the court below for operating a commercial vehicle equipped with solid tires between H street and Colorado avenue on Sixteenth street N. W., for purposes other than making deliveries or loading. The quoted section of the traffic regulations goes further than the regulation of traffic; it deprives the plaintiff in error of his legal right to the use of Sixteenth street.

The section limits the use of Sixteenth street by commercial vehicles equipped with solid tires and all horse-drawn vehicles to the "making of deliveries or loading, and for such purposes such vehicles shall enter and leave at the nearest intersection to such delivery or loading point." This in my opinion is a restriction amounting to prohibition. The right to pass and repass throughout the length of the street and on any part thereof, and the right to use the street as such, has

been denied to those of the public who use horse-drawn vehicles of every kind and to those who use commercial vehicles *equipped with solid tires*. It is true that they may use such limited parts of it as may be necessary for making deliveries or for loading, but for all other purposes its use is denied to them. Moreover, the section contains the following significant language: "Provided, however, that vehicles using said highways *for the purposes herein permitted* shall at all times obey the parking regulations in force thereon. * * *" (Italics not quoted.)

The power assumed by the director of traffic to extend permission for such limited uses is at the same time the exercise of the power of prohibition and exclusion. Such power having been exercised by the director of traffic, it remains to be seen whether or not such power has been delegated to him by the Congress.

Section 6 (b) of the Traffic Act (43 Stat. 1119), passed by the Congress March 3, 1925, reads as follows:

"(b) The director is hereby authorized, beginning 50 days after the enactment of this act, (1) to make reasonable regulations with respect to brakes, horns, lights, mufflers, and other equipment, the speed and parking of vehicles, the registration of motor vehicles, the issuance and revocation of operators' permits, *and such other regulations with respect to the control of traffic in the District not in conflict with any law of the United States as are deemed advisable,* which regulations shall remain in force until revoked by the director with the approval of the commissioners, and (2) to prescribe within the limitations of this act reasonable penalties of fine, or imprisonment not to exceed ten days in lieu of or in addition to any fine, for the violation of any such regulation. Such regulations shall become effective when adopted and promulgated by the commissioners in accordance with law." (Italics not quoted.)

Section 14 of the act reads as follows:

"Section 14. For the purpose of *expediting motor-vehicle traffic* the director is authorized and directed to designate and establish as *arterial highways or boulevards* such public highways as he deems advisable, to provide for the equipment of any such highway or boulevard with such traffic-control lights and other devices *for the proper regulation of traffic thereon,* as may be appropriated for by the Congress from time to time." (Italics not quoted.)

It will be observed from an examination of section 6 (b) that there is no express au-

thority extended therein to the director of traffic to restrict the use of the streets or any of them to any class or classes of vehicles.

Congress has provided for certain reasonable regulations with respect to certain enumerated things and for "such other *regulations* with respect to *the control of traffic* in the District *not in conflict with any law of the United States* as are deemed advisable." (Italics not quoted.) There is no indication therein that the Congress intended to delegate to the director of traffic the authority to exclude any class of vehicles from one or more streets of the District. On the contrary, the Congress has expressly limited the operation of the section to such regulations as are not in conflict with the laws of the United States. I would not attempt *to* suggest what other laws of the United States the Congress had in contemplation, if any; but it seems quite sensible and reasonable to me that, in view of the evident studied care to avoid using the words restrict, exclude, or prohibit, in the provisions under consideration, the Congress was reserving unto the public the existing right of using any and all vehicles consistent with the principles hereinbefore stated.

Section 14, supra, provides for the designation and establishment of such arterial highways or boulevards as the director of traffic may deem advisable for the purpose of expediting motor-vehicle traffic. It further provides for the "equipment of any such highway or boulevard with such traffic control lights and other devices *for the proper regulation of traffic thereon.*" Obviously, as stated in the majority opinion, the purpose of the establishment of the highways provided for in section 14, was to expedite motor vehicle traffic. The Congress expressly so stated. Moreover, the Congress expressly provided for traffic control lights and other devices for the proper *regulation* of traffic thereon. But is there any language in this section which even remotely suggests the delegation of authority to exclude a class or classes of vehicles from such streets? Does the authorization or direction of the designation or establishment of arterial highways or boulevards for the purpose of expediting motor vehicle traffic expressly or by necessary implication confer the power of excluding a class of motor vehicles from such streets? If so, why? I have been unable to find any legal or dictionary definition of the words "arterial" or "boulevard" which would suggest such an intention on the part of the Congress.

In every case that I have been able to find in which the authority of a municipal corporation to exclude certain classes of vehicles from streets known as "boulevards," "pleasure drives," etc., was upheld, such authority had been expressly conferred upon such municipal corporation by the state Legislature. As typical of the many decisions upon this point the case of Cicero Lumber Co. v. Town of Cicero et al., 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155, may be cited.

The case of People v. Waldo, 72 Misc. Rep. 416, 131 N. Y. S. 307, cited as an authority for the views expressed in the majority opinion is another instance where the right to exclude certain classes of vehicles from a certain "boulevard" was upheld, because the authority to exclude was expressly granted by the state Legislature. State v. Mayo, 106 Me. 62, 75 A. 295, 26 L. R. A. (N. S.) 502, 20 Ann. Cas. 512, and Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513, were also cited in the majority opinion in support of the views therein expressed. In each case the authority to enact a municipal ordinance excluding certain classes of vehicles from certain public streets was expressly conferred by the state Legislature.

It seems clear to me that, had the Congress intended to delegate the authority to the director of traffic to exclude certain classes of vehicles from arterial highways or boulevards or other streets in the District it would have said so. Such power not having been expressly delegated, it cannot be exercised simply because in the opinion of many (an opinion in which I concur) such power should have been conferred upon the District officers.

In the Act of January 26, 1887 (24 Stat. 368), repealed in part by section 16 (a) of the act in question, the Congress gave every evidence of being familiar with the distinction between the delegation of the power to regulate and that of the power to prohibit or exclude. It there conferred upon the commissioners of the District of Columbia the authority: "To *regulate* the storage of highly inflammable substances. * * * To make needful *regulations* for the orderly disposition of carriages. * * * To establish and *regulate* the charges to be made by owners of hacks. * * * To *prohibit* conducting droves of animals upon such streets and avenues as they may deem needful to public safety and good order. To *regulate* the keeping and running at large of dogs and fowls. * * * To *regulate* or

*prohibit* loud noises with horns, * * * and to *prohibit* the use of any fireworks or explosives within such portions of the District as they may think necessary to public safety. To *regulate* the movements of vehicles on the public streets and avenues for the preservation of order and protection of life and limb. * * *" (Italics not quoted.)

Carranzo v. District of Columbia, 56 App. D. C. 118, 10 F.(2d) 983, Croson v. District of Columbia, 55 App. D. C. 122, 2 F.(2d) 924, and Village of Euclid, Ohio, v. Ambler Realty Co. (decided by the Supreme Court of the United States, November 22, 1926) 47 S. Ct. 114, 71 L. Ed. ——, but not yet [officially] reported, were referred to in the majority opinion as supporting the conclusion therein reached.

In the case of Carranzo v. District of Columbia, this court, in holding that police regulations of the District of Columbia were valid which designated in the congested section of the District particular locations for licensed street venders, and provided that "outside of the 'congested section' no licensed street vender shall occupy a stand or remain in any one place upon any of the highways or public spaces for a longer period than is necessary to making a sale after having been approached or stopped for that purpose, except upon such stands designated for that purpose by the commissioners, * * *" said: "On the record before us, we would not be justified in saying that this was an unreasonable exercise of power; that is, that it amounted to prohibition, rather than regulation."

The decision in the case of Crane v. District of Columbia, 53 App. D. C. 159, 289 F. 557, was referred to in the opinion. In this case the court held that the District commissioners were without authority to prohibit vending on the streets, but that they had authority to designate locations on the streets for licensed venders. The court said:

"The act of 1887 did not authorize the commissioners to prohibit vending on the streets or public places. It simply empowered them to locate and change the stands of licensed venders and to pass regulations governing the conduct of such venders while doing business on the streets. * * * Congress could have authorized the commissioners to forbid all sales on the public streets or spaces or to limit such sales to licensed venders. It elected not to do so, and under the act of 1887, it does not lie with the commissioners to exercise a power which the Legislature of the District saw fit to withhold."

I do not doubt the correctness of the decisions in those cases. It should be noted, however, that the police regulations approved in the decision in the Carranzo Case were adopted in conformity to the decision in the Crane Case. The commissioners did not again attempt to exclude venders from the streets, but confined the regulations in regard thereto strictly within the regulatory power delegated by the Congress. The court in the Crane Case held that the delegation of power to regulate did not confer the power to prohibit, and this decision was referred to with unqualified approval in the decision in the Carranzo Case. It was in accord with the authorities then and now, and I have been unable to find any case which denies the soundness of the reasoning of the court or disputes the correctness of its conclusion.

In the case of Croson v. District of Columbia, supra, the court held that, under the general powers delegated by the Act of January 26, 1887, the Act of February 26, 1892 (27 Stat. 394), and the Act of March 3, 1917 (39 Stat. 1004), the commissioners of the District of Columbia were authorized to make reasonable regulations providing for the issuance of permits to drivers of automobiles, and providing that the failure of a driver to exhibit such permit when required should be punishable.

In my opinion, the decisions in those cases do not support the conclusion of my colleagues in this case.

In the case of Euclid, Ohio, v. Ambler Realty Co., referred to in the majority opinion, it was held by the Supreme Court of the United States that a zoning ordinance adopted by the council of the village of Euclid, Ohio, was not in conflict with the "constitutional protection 'to the right of property in the appellee by attempted regulations under the guise of the police power, which,'" it was argued, "'are unreasonable and confiscatory.'" It was not contended in that case that the village council had exceeded the authority delegated to it by the state Legislature. Such a claim was not and could not have been made, because, by sections 4366—1 to 4366—12, inclusive, of the General Code of Ohio, the state Legislature had delegated to the municipal authorities the power to establish zoning districts in the village, and regulate, limit, and restrict the height, bulk, location and use of buildings and other structures in such districts in accordance with the plan adopted by the municipal authorities for such village. The case is an interesting one but, in my opinion, has no relation to the issues here under consideration.

In the case of Clausen v. De Medina, 82 N. J. Law, 491, 81 A. 924, the Legislature of the state of New Jersey authorized certain officers of the several counties of the state to regulate traffic on the public highways, " * * * and to limit and prevent the driving or travel thereon of loaded or heavy trucks, wagons or carts, as the said board may have adopted or shall adopt from time to time. * * * " The regulations adopted by the officers in charge of a certain highway provided that " 'no automobile, locomobile, truck, cart or other vehicle used for business purposes will be allowed upon the road *except to deliver and receive its loading, and in that case must leave 'the boulevard east and west at the nearest traveled cross street.* * * * And provided, however, that nothing herein shall prevent the use of said road to *business wagons weighing, loaded, not more than 500 pounds on each wheel, at all times when used solely for pleasure driving.*' " (Italics not quoted.)

The court held that the authority to regulate and control traffic on the highway and to exclude loaded or heavy trucks, wagons, or carts, did not include the power to limit the use of the highway to vehicles used for pleasure only. The court said: " * *³ * But this control was intended to be control as contradistinguished from impairment, of the ordinary use by the public of a highway. Now, rule 9 deals generally with regulation as commonly understood and also with the limiting and preventing of travel. Justification for the latter is indeed found in the Act of 1891 [P. L. 1891, p. 79]; but the limitation and prevention of travel are confined to 'driving or travel thereon of loaded or heavy trucks, wagons or carts.' The road is a common highway, presumably for all people of the state. The statute is in derogation of this common right, and hence will be construed strictly, and clear authority for the enactment of the rule must be found. State, Breninger, Pros., v. Belvidere, 44 N. J. Law, 350."

This case is referred to in the majority opinion and dismissed with the following observation : "The difference between that case and this is so obvious as to require no further discussion." I am of the opinion that the principles upon which the decision in that case were based are directly involved in the issues here, and that the conclusion reached by my colleagues is directly opposed to those principles.

It should be borne in mind that it is not contended that commercial vehicles equipped with solid tires would injure Sixteenth street. The only argument for their exclusion is the expedition of traffic. This is a proper argument to make to the Congress for legislation on the subject. In this connection it should be observed that there is no regulation providing for a minimum rate of speed on Sixteenth street. Indeed, it would seem, from the provisions of section 9 (a) and (b) of the Traffic Act, very doubtful whether the Congress intended to delegate any such authority. Accordingly, were we to indulge in a general discussion of the subject, it might be proper to inquire why a slow-moving motor truck equipped with solid tires would retard traffic to any greater extent than one with pneumatic tires traveling at the same rate of speed.

However, my objection to the majority opinion is not based upon the proposition that the traffic regulations in question are unreasonable. I am inclined to the opinion that, if there was legislative authority for the exercise of the power, the exclusion of certain classes of traffic from Sixteenth street as provided in the regulations of the director of traffic would constitute a reasonable exercise of such power. The power of exclusion not having been delegated by the Congress to such official, he has no more authority to assume to permit restricted use and to prohibit the general use of Sixteenth street by commercial vehicles equipped with solid tires than any other citizen who might have opinions on the subject.

In my opinion the judgment should be reversed.