## DISTRICT OF COLUMBIA v. WHEELER.

### SAME v. GOLDMAN.

(Court of Appeals of District of Columbia.
Submitted November 3, 1926. Decided
February 7, 1927.)

Nos. 4491, 4492.

1. **District of Columbia ⬅⟶22—Under Traffic Act, director of traffic has authority to exclude horse-drawn vehicles from arterial highways or boulevards (District of Columbia Traffic Act 1925, as amended by Act July 3, 1926 [44 Stat. 812]).**

Under District of Columbia Traffic Act 1925 (43 Stat. 1119), as amended by Act July 3, 1926 (44 Stat. 812), director of traffic is authorized to exclude horse-drawn vehicles from arterial highways or boulevards, as done by Traffic Regulations, art. 11, § 13, subsec. (ac).

2. **District of Columbia ⬅⟶22—Traffic Act, as amended 1925, is not restricted to motor vehicle traffic (District of Columbia Traffic Act 1925, as amended by Act July 3, 1926 [44 Stat. 812]).**

District of Columbia Traffic Act 1925 (43 Stat. 1119), as amended by Act July 3, 1926 (44 Stat. 812), is not limited in its scope and purpose to motor vehicle traffic only.

Barber, Acting Associate Justice, dissenting.

In Error to the Police Court of the District of Columbia.

Harvey Wheeler and Fenton Goldman were charged with driving a horse-drawn vehicle along Sixteenth street in the District of Columbia, in violation of traffic regulations, and to review a judgment in each case, holding the particular regulation invalid and quashing the informations, the District of Columbia brings error. Judgment in each case reversed, and causes remanded.

E. W. Thomas, of Washington, D. C., for the District of Columbia.

R. J. Whiteford and H. S. Barger, both of Washington, D. C., for defendants in error.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. These are writs of error to the police court of the District of Columbia to review a decision of that court holding invalid subsection (ac) of section 13, article 11, of the Traffic Regulations of the District, and quashing informations based thereon.

[1, 2] The facts are identical, and each information charges the driving of a horse-drawn vehicle along Sixteenth street, Northwest, other than for the purpose of making deliveries or loading, in violation of the above traffic regulations. The validity of this regulation was sustained in Smallwood v. District of Columbia, —— App. D. C. ——, 17 F.(2d) 210, appeal No. 4498, recently decided by this court, where substantially the same contentions were made as now are advanced by counsel for defendants in error, who also were of counsel for plaintiff in error in the Smallwood Case.

The additional contention is made here that the Traffic Act of 1925 (43 Stat. 1119) related entirely to motor vehicle traffic. This contention, however, does violence as well to the language as to the obvious scope and purpose of that act. The amendment of July 3, 1926 (44 Stat. 812), that "traffic shall be deemed to include not only motor vehicles but also all vehicles, pedestrians, and animals, of every description," is not inconsistent with this conclusion, since that amendment is nothing more than a legislative interpretation of the prior act, designed to remove any possible doubt as to its all-embracing character. In other words, the authorization of the director in the prior act to make regulations "with respect to the control of traffic in the District" was sufficiently broad to include all traffic in the common and everyday acceptation of that term. As already observed, the director was given authority to regulate the speed and parking of all vehicles and the "registration of motor vehicles."

For the reasons fully stated in the Smallwood Case, we rule that the director of traffic was authorized to exclude horse-drawn vehicles from arterial highways or boulevards. It results that the judgment in each case must be reversed, with costs, and the cause remanded.

Reversed and remanded.

BARBER, Acting Associate Justice (dissenting). For various reasons, the more important of which are hereinafter set forth, I find myself unable to concur with my associates in this case. Inasmuch as the majority opinion contains neither the applicable provisions of the statute nor the traffic regulation in issue, I am forced, in order to present the questions involved, to insert both herein.

The District of Columbia's Traffic Act of March 3, 1925 (43 Stat. 1119), the only statute relied upon by the majority, is entitled "An act to provide for the regulation of motor vehicle traffic in the District of Columbia, increase the number of judges of the police court, and for other purposes."

Section 2 thereof contains ten definitions, two of which are as follows:

"(a) The term 'motor vehicle' means all vehicles propelled by internal combustion engines, electricity, or steam, except traction engines, road rollers, and vehicles propelled only upon rails and tracks. * *. *

"(h) The term 'park' means to leave any motor vehicle standing on a public highway, whether or not attended. * *. * "

Other relevant provisions are as follows:

"Sec. 6. (a) The commissioners are hereby authorized to appoint a director of traffic who, under the direction of the major and superintendent of police of the District of Columbia, shall perform the duties prescribed in this act and such additional duties, not inconsistent therewith, in respect of the regulation and control of traffic in the District, as the commissioners may require. * * *

"(b) The director is hereby authorized, beginning 50 days after the enactment of this act, (1) to make reasonable regulations with respect to brakes, hors, lights mufflers, and other equipment, the speed and parking of vehicles, the registration of motor vehicles, the issuance and revocation of operators' permits, and such other regulations with respect to the control of traffic in the District not in conflict with any law of the United States as are deemed advisable, which regulations shall remain in force until revoked by the director with the approval of the commissioners, and (2) to prescribe within the limitations of this act reasonable penalties of fine, or imprisonment not to exceed 10 days in lieu of or in addition to any fine, for the violation of any such regulation. * * *

"Sec. 9. (a) No motor vehicle shall be operated upon any public highway in the District at a rate of speed greater than 22 miles per hour, except in such outlying districts, and on such arterial highways, as the director may designate.

"(b) No individual shall operate a motor vehicle over any public highway in the District (1) recklessly; or (2) at a rate of speed greater than is reasonable and proper, having regard to the width of the public highway, the use thereof, and the traffic thereon; or (3) so as to endanger any property or individual; or (4) so as unnecessarily or unreasonably to damage the public highway."

Subdivisions (c) and (d) of this section prescribe penalties for "violating any provision of this section" where (1) the offense is reckless driving thereunder and (2) for any other violation of the section. And I note in passing that these penal provisions are therefore limited to operators of *motor* vehicles.

"Sec. 14. For the purpose of expediting motor vehicle traffic the director is authorized and directed to designate and establish as arterial highways or boulevards such public highways as he deems advisable, to provide for the equipment of any such highway or boulevard with such traffic-control lights and other devices for the proper regulation of traffic thereon, as may be appropriated for by the Congress from time to time."

There are other sections in the act, containing many provisions as to *motor* vehicles and their operators, imposing different penalties for violating the different provisions thereof. The Act of June 29, 1906, 34 Stat. 621, which regulates the speed of "any automobile, horseless or motor vehicle, bicycle, or horse-drawn vehicle" in the fire limits of the District, is repealed, and also, "in so far as they relate to the regulation of vehicles or vehicle traffic," certain other statutes. Among these is the Act of January 26, 1887, 24 Stat. 368. That act (section 2), among other things, authorizes the commissioners:

"Fourth. To make needful regulations for the orderly disposition of carriages or other vehicles assembled on streets or public places. * * *

"Sixth. To prohibit conducting droves of animals upon such streets and avenues as they may deem needful to public safety and good order. * * *

"Eighth. To prohibit the deposit upon the streets or sidewalks" of certain articles.

"Ninth. To regulate or prohibit loud noises * * * upon the streets or public places, and * * * prohibit the use of * * * fireworks or explosives" in the District.

"Tenth. To regulate the movements of vehicles on the public streets and avenues for the preservation of order and protection of life and limb."

The Appropriation Act of March 3, 1917, 39 Stat. 1004, is also repealed to the same extent. At page 1012 thereof are provisions for the registration and license of all *motor* vehicles.

The Traffic Act also, in section 16 (b), authorizes the chief of engineers to make and enforce regulations for the control of *vehicles* and traffic in the park system of the District and to limit the speed thereof on roads, highways, and bridges within the public grounds under his control.

The particular regulation, the violation of which is charged in the information, is as follows:

Regulation 13 (ac), art. XI: "Commercial vehicles equipped with solid tires, and horse-drawn vehicles, shall not be operated on Sixteenth street, between H and Colorado avenue, * * * except for the purpose of making deliveries or loading, and for such purposes such vehicles shall enter and leave at the nearest intersection to such delivery or loading point. * * * "

The part of Sixteenth street referred to in the regulation is some three miles in length, and the informations charge that each defendant drove a horse-drawn vehicle on that part of Sixteenth street described in the regulation, other than for the purpose of making deliveries and loading.

By the Act of July 3, 1926, a statute of 69th Congress, No. 813, Congress amended the Traffic Act by adding to the definitions in section 2 the following:

"(k) The term 'vehicle' shall apply to any appliance moved over a highway on wheels or traction tread, including street cars, draft animals, and beasts of burden.

"(l) Traffic shall be deemed to include not only motor vehicles but also all vehicles, pedestrians, and animals, of every description."

44 Stat. 812.

Section 9 (a) was amended to read as follows:

"No vehicle shall be operated upon any public highway in the District at a speed greater than twenty-two miles per hour except in such outlying districts and upon such highways as the director may designate. In such outlying districts and on such arterial highways or boulevards, and on all other public thoroughfares or bridges and alleys, the speed of all vehicles except street cars shall be governed by the provisions of this act and the regulations promulgated thereunder."

44 Stat. 814.

Other amendments were also made, but they contain no language that in terms vests the director or the commissioners with power to *prohibit* the operation of any vehicle on any street or highway in the District.

The defendants argue that, inasmuch as the Traffic Act repealed the previous general and broader power of the commissioners to regulate and control traffic of all kinds in the streets and highways of the District, and as the Act of July 3, 1926, amended the Traffic Act in such manner as to specifically extend the power of regulation to horse-drawn vehicles, it is clear that the prosecutions in these cases, commenced in March, 1926, are without foundation because there was then no authority vested in the commissioners or director to *prohibit* the use of horse-drawn vehicles on any part of Sixteenth street.

The lower court sustained motions to quash the informations, finding that Congress "was dealing with motor vehicles in the Traffic Act, and not with horse-drawn vehicles."

In considering this issue, it is significant that section 9 (a) of the Traffic Act is limited to motor vehicles; that the prohibitions of section 9 (b) relate wholly thereto; that the amendments removed the limitation in (a) as to motor vehicles and extended the prohibitions in (b) to all vehicles; also that Congress withheld from the director the power to *limit* the speed of vehicles and traffic within his territory which in section 16 (b) it expressly delegated to the chief of engineers in the territory under his control without the limitation that his regulations relating thereto should not conflict with any law of the United States; and also that definitions (k) and (l) of the amending act greatly enlarge the common meaning of the word "vehicle" and define the word "traffic" to include all vehicles. I think the amendments were much more than a legislative interpretation of the Traffic Act as affecting the issues here.

In view of the purpose and language of that act and of the well-settled law that such statutes are to be srictly construed, I am of opinion that the judgment below should be affirmed on the ground stated by that court. It would extend this dissent to an unreasonable length to further discuss this phase of the case, and therefore I refer therefor to the opinion of the lower court, which is embodied in the record.

I question the accuracy of the statement in the majority opinion that the Traffic Act gave the director the authority to regulate "the speed and parking of all vehicles." I am unable to find that the word "all" is used in that connection therein. The word "park," as defined in section 2 (h), is expressly limited to motor vehicles. Hence the term "parking of vehicles," in section 6 (b), must be limited to the parking of *motor* vehicles.

Assuming, but not admitting, that the Traffic Act, before being amended, did for any purpose relate to horse-drawn vehicles, I am still of opinion that the regulation is invalid, because the act does not authorize the permanent exclusion of any such vehicles from any part of Sixteenth street.

In discussing this issue, I exclude any consideration of the power of the commissioners to make temporary emergency regu-

lations *prohibiting* vehicles from using the streets and public places in the District. I note, however, that Congress has evidently deemed it necessary by special act to expressly confer such authority for limited periods. See Joint Resolutions of January 29, 1913, 37 Stat. 1021, and of January 26, 1923, 42 Stat. 1218. In other words, Congress apparently has not intended to delegate any authority to *prohibit* the use of the streets by vehicles unless by an act specially so authorizing.

There can be no question that the purpose and effect of regulation 13 is to exclude permanently from the described part of Sixteenth street any person driving a horse-drawn vehicle, unless it is then being used to transport something to be loaded or unloaded on that street, and that as to such person no continuous trip over such part can be made. No other member of the public driving a horse-drawn vehicle, whether his purpose be for business, health, or pleasure, even though he lives upon Sixteenth street, is permitted to drive thereon. Unquestionably that is prohibition, and not regulation.

Unless prevented by constitutional restrictions, the legal title to public streets and highways is vested in the sovereign, as trustee for the public, subject to such regulations as to use as do not unreasonably interfere with the right of travel thereon throughout the whole extent thereof. This right belongs to citizens and strangers. It is the right of free passage, concerning which the law recognizes no favorites. Passage may be for business, health, or pleasure, in any reasonable manner. It extends to pedestrians, as well as to those who ride. The power to regulate such travel may be delegated to local authorities, but the statute delegating the power will be strictly construed. In the absence of such delegation, local authorities have no power to regulate or control such travel. Smith v. Corporation of Washington, 20 How. (61 U. S.) 135, 15 L. Ed. 858; Carey v. Washington, 5 Fed. Cas. No. 2404; Moore v. District of Columbia, 12 App. D. C. 537; Oppenheimer v. Philadelphia B. & W. R. Co., 39 App. D. C. 253; 29 C. J. 646, and numerous cases cited; Sumner County v. Interurban Transportation Co., 141 Tenn. 493, 213 S. W. 412, 5 A. L. R. 765; Roennau v. Whitson, 188 Iowa, 138, 175 N. W. 849; Peace v. McAdoo, 110 App. Div. 13, 96 N. Y. S. 1039; People v. Kerr, 27 N. Y. 188.

No citation of authority is necessary to show that, from the time when public highways were first established in this District, horses, with or without vehicles attached, have been a common means of transportation and travel for all classes. No safer medium, other than that of man power, for propelling vehicles, has been found. It is true that in recent years motor vehicles have largely superseded horse-drawn vehicles. That fact alone, however, does not justify the exclusion from the streets of the earlier means of transportation, nor can they in any event be excluded without express legislative authority therefor. I do not think such authority can be found in the Traffic Act.

In the opinion in the Smallwood Case, regarded as ruling this, the majority holds that regulation 13 was authorized by section 6 (b) of the Traffic Act, and finds support for that conclusion in the provisions of section 14. But the last-mentioned section only confers upon the director the power and duty to designate and establish arterial highways or boulevards for the purpose of expediting motor vehicle traffic. When he has designated and established arterial highways or boulevards, and provided for their equipment with such traffic-control lights and other devices proper for the regulation of traffic thereon, as Congress may make appropriation for, he has reached the limit of his power under the section. Conceding that one purpose of the act was to allow a greater speed than twenty-two miles per hour to *motor vehicles* on designated arterial highways and boulevards for the purpose of expediting traffic, Congress has, nevertheless, expressly provided how that purpose shall be accomplished; that is, not by excluding other traffic therefrom, but by such traffic-control lights and other devices as Congress itself may provide.

The grant and limitations of the power of the director to make regulations are to be found only in section 6 (b). That section delegates to him authority to make reasonable regulations with respect to "the speed and parking of vehicles, * * * and such other regulations with respect to the control of traffic * * * not in conflict with any law of the United States as are deemed advisable."

Assuming, but not admitting, that section 6 (b) applies to horse-drawn vehicles and traffic by means thereof, what did Congress mean by declaring that the regulations should not conflict with any law of the United States? Some force and effect must be given to that express provision. Thereby Congress definitely recognized that there was

a law applicable to the use of public streets and highways to invade which no power was granted to the director. Obviously it must have been the law that gives the right of free passage in a reasonable manner to the public, with or without vehicles, over such streets and highways. It follows that the director can make no valid regulations that permanently prohibit vehicles or traffic from using any public street or highway in such manner. The majority does not appear to have considered this.

Congress has made express provisions in section 9 (a) and (b) as to the rate of speed at which motor vehicles may be driven over public highways. It has expressly omitted any such provision as to horse-drawn vehicles. It has delegated no power to the director to prescribe the speed of any vehicle whatever. It has declared that the speed of motor vehicles shall not be greater than 22 miles per hour, except in outlying districts and on arterial highways; it shall not be reckless; it shall not be greater than is reasonable and proper having regard to the width of the highway, its use and the traffic thereon; and it shall not endanger any property or individual or unnecessarily or unreasonably damage the highway itself.

It is said in Christy v. Elliott, 216 Ill. 31, 74 N. E. 1035, 1 L. R. A. (N. S.) 215, 108 Am. St. Rep. 196, 3 Ann. Cas. 487: "Limitation of the speed of automobiles upon the public streets, roads and highways is for the protection of travelers and drivers of horse-drawn vehicles upon such highways." Undoubtedly that was the purpose of section 9.

By providing that the speed of motor vehicles must be reasonable, in view of the traffic, and must not endanger persons or property, Congress clearly recognized that persons, property, and other traffic would be on the highway; it did not prescribe that such persons, property, or traffic should refer only to motor vehicles and those using the same. The section clearly recognizes the right of all members of the public, whether riding in horse-drawn vehicles or walking, to use the public highways in a reasonable manner, and no regulation made by the director can limit or modify this provision, or prevent the public from exercising its right of passage.

There was no power expressly or impliedly delegated to reserve, for the use of motor vehicles only, any public highway. If horse-drawn vehicles may be excluded therefrom, why may not pedestrians, because the reasonable use of sidewalks by them necessarily implies their right to cross the streets in a reasonable manner at least at street intersections. Is it possible that Congress intended that pedestrians could be excluded from passage along the sidewalks, or from crossing from one side of the street to the other?

In considering this phase of the case it must always be remembered that the provisions of section 9 apply to motor vehicles on arterial highways, as well as elsewhere; that any rate of speed thereon within the provisions of the section is lawful, and any greater rate of speed is unlawful. Obedience to these provisions will often result in motor vehicles being driven at a slow rate of speed, capable of being attained by horse-drawn vehicles.

Disregarding for the moment, but not minimizing, the effect of the express provision that regulations made by the director shall not conflict with any law of the United States, the conclusion must still be that he is without authority to make regulation 13, because the Congress has deliberately omitted the language necessary to grant him power so to do.

In Peace v. McAdoo, supra, the proper officers of the city of New York were by the Legislature authorized "to regulate the movement of teams and vehicles in the streets, bridges, squares, parks and public places." Under the supposed authority of this provision the city authorities undertook to prohibit the passage of vehicles in parts of certain streets. The court held no such power was granted by the Legislature, saying, among other things:

"* * * The power to regulate is not power to prohibit. * * * To regulate implies that there exists the subject * * * to be regulated. The right of regulation is restricted to the 'movement of teams and vehicles in streets.' * * * If, under the guise of a regulation, that movement is forbidden in any part of a street, there is, of course, an impairment of the right—a pro tanto prohibition against its exercise."

In McConvill v. Jersey City, 39 N. J. Law, 38, the Legislature authorized the municipal authorities "to regulate and control" the driving of certain animals through the streets. It was undertaken by an ordinance to prohibit the driving thereof through any streets of the city. The court held that the ordinance was bad for vagueness, and that, if its effect was virtually to prohibit, it was void as without authority on the ground; "* * * that the words 'regulate and control' did not necessarily or properly imply the power to prohibit."

In Sumner County v. Interurban Transportation Company, supra, the same principle was definitely recognized.

The books are full of cases discussing the meaning of the words "regulate and control," as used in statutes, but no case is cited, and I find none, where they are held to include the right to permanently prohibit the reasonable use of public highways, unless that power is expressly conferred by the statute or *necessarily* implied from the power expressly granted. See 29 C. J. 646, and cases cited; Palatine v. Canajoharie Water Supply Co., 90 App. Div. 548, 86 N. Y. S. 412, affirmed in 184 N. Y. 582, 77 N. E. 1197; People v. Schneider, 139 Mich. 673, 103 N. W. 172, 69 L. R. A. 345, 5 Ann. Cas. 790; Bryne v. Drain, 127 Cal. 663, 60 P. 433; Commonwealth v. Mulhall, 162 Mass. 496, 39 N. E. 183, 44 Am. St. Rep. 387; Clausen v. De Medina, 82 N. J. Law, 491, 81 A. 924.

This court has often expressly or by implication recognized the distinction between regulation or control and prohibition. District of Columbia v. Sargeant, 17 App. D. C. 264; Brownlow v. O'Donoghue, 51 App. D. C. 114, 276 F. 636, 22 A. L. R. 939; Crane v. District of Columbia, 53 App. D. C. 159, 289 F. 557; Coombe v. United States, 55 App. D. C. 190, 3 F. (2d) 714.

Congress itself has done the same thing in the act of January 26, 1887, section 2, parts of which are hereinbefore quoted. These and other provisions of the act were referred to in Crane v. District of Columbia, supra, in the following language: "Of the eleven paragraphs of the act, seven authorized the commissioners to regulate, two to prohibit, one to regulate or prohibit, and one to prescribe reasonable penalties. * * * "

Such discriminating use of language by Congress necessarily implies that, if it had intended in the Traffic Act to delegate the power to prohibit, it would have expressly so declared. In Carey v. Washington, 5 Fed. Cas. No. 2404, Judge Cranch said:

"But the corporation has no power to prohibit or restrain the exercise of a common right, unless that power be expressly given, or be necessary to the exercise of some expressly given power."

Tested by this rule, I am unable to understand how, given the most liberal interpretation, the delegation in the Traffic Act to the director of the power to regulate the speed of vehicles or the control of traffic, can justify any attempt on his part to exclude permanently from any street of the city horse-drawn vehicles, the use of which on the street is a common right.

In B. & O. R. Co. v. Fitzgerald, 35 App. D. C. 116, it was said, in substance, that it had been repeatedly held by this court that the commissioners had no power to enact usual and reasonable regulations upon any and all subjects which they might consider proper, but that they were limited to the enactment of a regulation upon subjects specified in the statute.

People v. Waldo, 72 Misc. Rep. 416, 131 N. Y. S. 307, State v. Mayo, 106 Me. 62, 75 A. 295, 26 L. R. A. (N. S.) 502, 20 Ann. Cas. 512, and Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513, cited by the majority, do not, in my opinion, support the conclusion reached by them. A careful examination of each shows that the legislative bodies of the respective states had in *express terms* granted the municipalities the power to limit the use of the streets in question to certain vehicles or to exclude certain vehicles therefrom, thus recognizing the distinction between the power to regulate or control and the power to prohibit, and also that the power to prohibit did not exist in the municipalities unless and until it was expressly or by necessary implication delegated.

The case of Village of Euclid v. Ambler Realty Co., 47 S. Ct. 114, 71 L. Ed. ——, also cited, is equally inapplicable. There the constitutionality of zoning ordinances adopted under statutory authority was challenged as a whole. All the Supreme Court decided was that ordinances enacted under such authority in their general scope and dominating features were valid, but it left open to be determined, as the same might arise, the question as to whether certain provisions thereof were or were not valid.

Under statutes authorizing municipalities and public service commissions to regulate, fix, and determine the highways upon which jitney or other busses carrying passengers for hire may be permitted to operate and the conditions to be observed in so doing, the courts have uniformly held that there is no inherent right to carry on such business on the public highways and that when authorized by the Legislature so to do, the municipal authorities or the public service commissions may exclude such conveyances from certain streets. Cutrona v. Mayor and Council of Wilmington (Del. Ch.) 124 A. 658; Reo Bus Lines Co. v. Southern Bus Line Co., 209 Ky. 40, 272 S. W. 18; Maine Motor Coaches, Inc., v. Public Utilities Commission, 125 Me. 63, 130 A. 866; Schlesinger v. City of Atlanta, 161 Ga. 148, 129 S. E. 861;

Montz v. District of Columbia, 20 App. D. C. 568.

It is obviously upon the principle recognized in these cases that the decision in Carranzo v. District of Columbia, 56 App. D. C. 118, 10 F.(2d) 983, cited in the majority opinion, rests. Licensed push cart venders there were undertaking to ply their trade on the streets in congested sections of the city which, under the provisions of the act of January 26, 1887, the commissioners were authorized to regulate. In the case of Crane v. District of Columbia, supra, it was held that the commissioners had no authority to prohibit such trade. I do not understand the applicability of Croson v. District, 55 App. D. C. 122, 2 F.(2d) 924 and White v. District, 55 App. D. C. 197, 4 F.(2d) 163, cited in the Smallwood opinion.

Keeping in mind that these prosecutions were brought before the Traffic Act was amended, I think the court errs in its conclusion because:

(a) The Traffic Act does not relate to horse-drawn vehicles; (b) assuming that it does, the regulation violates the provision that the director shall make no regulation in conflict with any law of the United States; and (c) assuming that such conflict does not exist, the regulation is, nevertheless, invalid because Congress has not delegated any power to the director to permanently exclude horse-drawn vehicles from Sixteenth street.

I would affirm the judgment below.