[Civ. No. 56984. Second Dist., Div. Three. July 21, 1980.]

DOUGLAS DALE CLINGENPEEL, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE ANTELOPE JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and
Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

[Civ. No. 57591. Second Dist., Div. Three. July 21, 1980.]

NAPOLEON WATSON, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE ANTELOPE JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and
Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

[Civ. No. 57590. Second Dist., Div. Three. July 21, 1980.]

STEVE MICHAEL ROUTH, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE ANTELOPE JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and
Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Harry B. Sondheim and Sterling S. Suga, Deputy District Attorneys, for Real Party in Interest and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Stanley R. Langford, Anita Susan Brenner and Norma Mitchell, Deputy Public Defenders, for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

OPINION

**POTTER, Acting P. J.**—On the People's motion, their appeals from three judgments of the superior court have been consolidated. Each of the judgments, under substantially similar circumstances, granted a peremptory writ of prohibition directing the Municipal Court for the Antelope Judicial District to permanently desist and refrain from further proceedings upon misdemeanor charges pursuant to Vehicle Code[1] section 23102 (driving while under the influence of alcohol). In each case, the complaint (or count) was amended to read that defendants did "unlawfully drive a vehicle, to wit, a non-motorized bicycle." So amend-

---

[1]All references herein to the "code" or to code sections mean the Vehicle Code unless otherwise stated.

ed, each count was demurred to by the defendants. The demurrers were overruled, and prohibition proceedings were commenced in the superior court.

The superior court heard all three matters at the same time and made findings of fact reciting the charges and amendments as above set forth. From these undisputed facts, the superior court concluded in each case that the municipal court was without jurisdiction to proceed, since "[t]he Legislature has not made the conduct with which petitioner is charged subject to criminal sanctions under the Vehicle Code."

The sole issue in these consolidated appeals is the correctness of the superior court's conclusion that the operation of a bicycle while under the influence of intoxicating liquor is not made "subject to criminal sanctions under the Vehicle Code."

Having examined the pertinent provisions of the code in light of the constitutional requirements of procedural due process, we agree with the superior court's conclusion and consequently will affirm.

## Procedural Due Process Requires That a Criminal Statute Give Fair Warning of the Acts or Omissions Which It Declares to Be Prohibited and Punishable

The requirement of certainty in criminal statutes is well stated by the opinion of the Third District in *Solander* v. *Municipal Court* (1975) 45 Cal.App.3d 664, 667 [119 Cal.Rptr. 609], as follows: "It is well settled that as a part of procedural due process, a criminal statute must be so definite and certain that it gives fair warning, not necessarily with mathematical exactitude, but sufficient to inform a person of ordinary or average intelligence, of *what acts or omissions it declares to be prohibited and punishable. (People* v. *McCaughan, supra,* 49 Cal.2d 409, 414 [317 P.2d 974]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257]; *People* v. *Hallner* (1954) 43 Cal.2d 715 [277 P.2d 393]; *In re Joseph G.* (1970) 7 Cal.App.3d 695, 702 [87 Cal.Rptr. 25]; *Tip Top Foods, Inc.* v. *Lyng* (1972) 28 Cal.App.3d 533, 547 [104 Cal.Rptr. 718].)" (Italics added.)

The foundation for this requirement is stated in the opinion of this division in *In re Davis* (1966) 242 Cal.App.2d 645, 650 [51 Cal.Rptr. 702]: "The classic formulation of the test for unconstitutional vagueness

is that of Justice Sutherland in *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322]: 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it *what conduct on their part will render them liable to its penalties,* is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" (Italics added.)

In *Drucker* v. *State Bd. of Med. Examiners* (1956) 143 Cal.App.2d 702, 709-710 [300 P.2d 197], division one of this district stated: "The law is settled that due process of law requires that all statutes defining criminal offenses must specifically describe the conduct which is forbidden and must fix an ascertainable standard of guilt. The terms of such statute must be sufficiently definite so that men of common intelligence will not have to guess at its meaning and will not differ as to its application....

" . . . . . . . . . . . . . . .

"In *Lanzetta* v. *New Jersey*, 306 U.S. 451 [59 S.Ct. 618, 83 L.Ed. 888], at page 890 [83 L.Ed.], the court said: "'...No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids....'"

Consequently, in deciding whether driving a bicycle while intoxicated is a criminal offense, the issue is whether the applicable provisions of the code are sufficiently definite and certain to give fair warning that such conduct is "prohibited and punishable."

 *The Code Does Not Give Fair Warning*
*That Driving a Bicycle While*
*Under the Influence of Alcohol*
*Is Prohibited and Punishable*

Code section 23102 prohibits the operation of a "vehicle" by any person who is under the influence of intoxicating liquor. It provides: "(a) It is unlawful for any person who is under the influence of intoxicating li-

quor, or under the combined influence of intoxicating liquor and any drug, to drive a vehicle upon any highway."

This section, however, is not directly applicable to the driver of a bicycle since the code defines a vehicle in a way which excludes bicycles. Section 670 defines "vehicle" as follows: "A 'vehicle' is a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved exclusively by human power or used exclusively upon stationary rails or tracks."

The sole basis for the People's claim that it is a public offense to drive a bicycle while under the influence of intoxicating liquor is the provision of code section 21200 which, at the time of the alleged offenses, provided: "Every person riding a bicycle upon a roadway or any paved shoulder has all the rights and is subject to all the duties applicable to the driver of a vehicle by this division and Division 10 (commencing with Section 20000), except those provisions which by their very nature can have no application.

"A bicycle is a device upon which any person may ride, propelled exclusively by human power through a belt, chain or gears, and having either two or three wheels in a tandem or tricycle arrangement."

Section 21200 is a part of division 11 of the code, as is section 23102.

The origin of the language of section 21200, referring to "duties applicable to the driver of a vehicle by this division" appears to be a 1943 amendment to a predecessor section (§ 452) of the code. Section 452, which was applicable both to persons riding a bicycle and to persons riding or driving an animal, before the 1943 amendment provided: "Every person riding a bicycle or riding or driving an animal upon a highway is subject to the provisions of this division applicable to the driver of a vehicle, except those provisions which by their very nature can have no application."

As amended, section 452 read: "Every person riding a bicycle or riding or driving an animal upon a highway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this division, except those provisions which by their very nature can have no application."

At the time of the above amendment, section 452 was (and remained) in division 9 of the code which comprised 14 chapters under the general heading "Traffic Laws." One of these chapters dealt with "Felonies and Other Offenses" and in it were included sections 502 (drunk driving) and 505 (reckless driving). Other chapters of the division dealt generally with rules of the road, such as speed laws, traffic signs and rights-of-way. Section 450 made it "a misdemeanor for any person to do any act forbidden or fail to perform any act required in this division."

The pre-1943 version of section 452, by making cyclists "subject to the provisions of this division," thus made it a criminal offense for cyclists to violate any of the traffic laws. The new language subjecting cyclists to the "duties applicable to the driver of a vehicle by this division," rather than the "provisions of this division," rendered the section ambiguous.

The provisions of division 9 did much more than grant rights to drivers of vehicles and impose duties upon them. It also made criminal offenses out of violations of all such duties and prescribed penalties therefor. If the Legislature had intended to inform cyclists that they would be subject to prosecution and would suffer the same punishments as motorists, it would have been very simple to do so either by simply leaving the section as it was or by providing that cyclists "shall be subject to all of the duties, prohibitions and punishments applicable to the driver of a vehicle."

The pertinent language of the current section contains the same, if not greater, ambiguity. Division 11 of the Vehicle Code, of which section 21200 is a part, like former division 9, comprises the rules of the road. It contains a great variety of provisions granting rights and imposing duties, prohibitions and punishments upon drivers of motor vehicles. Unlike former division 9, it does not make the violation of every duty so imposed "unlawful" nor impose criminal sanctions upon all such violations. That function is now delegated to division 17, section 40000.1 of which provides: "[I]t is unlawful and constitutes an infraction for any person to violate, or fail to comply with any provision of this code,..." But section 21200 does not make division 17 applicable to cyclists, so their violations are not thereby made unlawful nor punishable. The only violations made punishable by division 11 are those described in chapter 12, entitled "Public Offenses." The sections in this chapter all specifi-

cally proscribe conduct as "unlawful," describe conduct as a "misdemeanor," or specify a punishment therefor. Like the corresponding chapter in former division 9, they are the serious violations such as drunk driving and reckless driving.

The intent apparent from the current provisions is that cyclists shall be subject to all of the duties embodied in the rules of the road. ■■ ■■■ Should they violate any of such duties, they will suffer the same civil disabilities and liabilities[2] suffered by the driver of a motor vehicle. Evidence Code section 669, subdivision (a)(1), creates a presumption of a failure to exercise due care from the fact that a person "violated a statute, ordinance, or regulation of a public entity;..." The provision of section 40000.1, making infractions of any violations of the rules of the road, have no application because that section is not in divisions 10 or 11, to which section 21200 refers. Thus, routine violations do not subject cyclists to criminal punishment. It would then be wholly anomalous for the Legislature to have made applicable to cyclists the severe penalties imposed upon drunken drivers of motor vehicles.

As pointed out by our Supreme Court in *Taylor v. Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], these penalties reflect the grave public concern over "the severe threat to the public safety which is posed by the intoxicated driver" (*id.*, at p. 899) that arises from "combining sharply impaired physical and mental faculties *with a vehicle capable of great force and speed....*" (*id.*, at p. 897). (Italics added.)

This threat is colorfully described by Division One of this court in *Anderson v. Cozens* (1976) 60 Cal.App.3d 130, 143-144 [131 Cal.Rptr. 256], as follows: "[T]he carnage and slaughter on California freeways and byways caused by drunk drivers (*Bush v. Bright* (1968) 264 Cal. App.2d 788 [71 Cal.Rptr. 123]; *Funke v. Department of Motor Vehicles* [1969] *supra*, 1 Cal.App.3d 449 [81 Cal.Rptr. 662]) which 'now reaches the astounding figures only heard of on the battlefield' (*Breith-*

---

[2]The term "duty" is customarily used to describe the relationship between a defendant and a plaintiff giving rise to civil liability for negligence. See, for example, *Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 498 [147 Cal.Rptr. 898], where the court said: "Whether a defendant owes a duty of care to a plaintiff is primarily a question of law to be decided on a case-by-case basis. (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) 'As a general principle, a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous."' (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434-435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)"

*aupt* v. *Abram* (1957) 352 U.S. 432, 439 [1 L.Ed.2d 448, 453, 77 S.Ct. 408]; *People* v. *Fite* [1968] *supra*, 267 Cal.App.2d 685 [73 Cal.Rptr. 666]. [Fn. omitted.]"

Though the operation of bicycles by intoxicated drivers no doubt poses some threat to public safety, the combination of bicycle and cyclist does not possess the "great force and speed" referred to by our Supreme Court in *Taylor* v. *Superior Court, supra*, 24 Cal.3d at page 897, nor is it capable of producing the "carnage and slaughter" reaching the "'astounding figures only heard of on the battlefield'" referred to in *Anderson* v. *Cozens, supra*, 60 Cal.App.3d at page 143.

The foregoing anomaly is even more apparent when consideration is given to the entire penalty structure attached to section 23102. A significant aspect of the sanctions applicable to drunk driving relate to revocation or suspension of a person's driving privilege. Vehicle Code section 13210 mandates suspension "whenever any person is convicted for the first time of driving *a motor vehicle* while under the influence of intoxicating liquor" unless good cause be shown to the contrary. (Italics added.) To obtain evidence for the successful prosecution of drinking motorists, section 13353, subdivision (a), provides: "Any person who drives *a motor vehicle* upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine. . . ." (Italics added.) The above provisions, expressly limited to drivers of "a motor vehicle," obviously are wholly inappropriate to a cyclist who does not even require a license.

■ To summarize: in order validly to subject cyclists to criminal punishment, section 21200 must explicitly inform cyclists that their driving of a bicycle while under the influence of intoxicating liquor will render them liable to such punishment, and it must do so in terms sufficiently clear that men of common intelligence would not differ as to its application. Judged by this test, section 21200 of the Vehicle Code fails to meet due process standards. It characterizes no conduct as criminal and invokes no criminal penalty. Furthermore, the penalties which the People would have us apply are a response to a well-recognized and highly publicized crisis attributable to drunk driving of motor vehicles, not bicycles. People of common intelligence would not assume that this response was intended to be made applicable to drunk driving of bicycles, to which it would appear to be an overkill.

We, therefore, agree with the trial court that the Legislature has not made the driving of bicycles, while under the influence of intoxicants, subject to criminal sanctions.[3]

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1980. Manuel, J., was of the opinion that the petition should be granted.

---

[3]Of course, if he is so drunk "that he is unable to exercise care for his own safety or the safety of others," a cyclist on a public highway is guilty of a violation of Penal Code section 647, subdivision (f).