**Baker N. EVERTON, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 07–CT–1350.**

District of Columbia Court of Appeals.

Submitted April 6, 2010.

Decided April 22, 2010.

Daniel K. Dorsey, Washington, DC, was on the brief, for appellant.

Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Attorney General, and Janice Y. Sheppard, Assistant Attorney General, were on the brief for appellee.

Before RUIZ, Associate Judge, and FERREN and SCHWELB, Senior Judges.

RUIZ, Associate Judge:

Baker N. Everton appeals his conviction for operating a vehicle under the influence of alcohol (commonly referred to as

"DUI"), in violation of D.C.Code § 50–2201.05 (2001), which appellant claims does not apply to his riding a bicycle while concededly intoxicated. Although the applicable provision of the Traffic Act that incorporates the DUI statute has been in place since the 1920s, this appeal presents an issue of first impression. We conclude that the DUI statute applies to bicycles and affirm the trial court's judgment.

## I. Statement of Facts

On January 12, 2007, at approximately 7:45 p.m., appellant Everton was "yelling and screaming" on the sidewalk at the intersection of Georgia Avenue and Otis Place, N.W., in Washington D.C. Officers Matthew Mahl and Brandon Stagon, members of the Metropolitan Police Department, were on patrol in that area when they heard a loud "commotion" and turned to see appellant standing next to his bicycle.

After approaching appellant, Officer Mahl noticed that appellant had a very strong odor of alcohol on his breath, his eyes were bloodshot and watery, and he was unsteady on his feet, as he "wobbled" and "sway[ed]." In short, Mahl believed that appellant was very intoxicated. Similarly, Officer Stagon observed that appellant's speech was slurred and very loud and that appellant could "hardly stand." The officers asked appellant to quiet down and move on, and told him not to ride his bicycle because he was so intoxicated. Appellant, however, proceeded to ride his bicycle. Officer Mahl repeated his warning not to ride the bicycle, but appellant rode away. As he crossed Otis Place, appellant almost hit a small child who was in the crosswalk. Appellant then lost control of the bicycle and fell on the ground. Officers Mahl and Stagon arrested appellant for violating D.C.Code § 50–2201.05.

Officer Mahl did not administer any of the standard field sobriety tests on the scene out of safety concerns given appellant's level of intoxication and the fear that he could harm himself. Once in the police station, however, Mahl performed the horizontal gaze and nystagmus test and found six clues of impairment evidencing a high level of intoxication.

## II. Is a bicycle a "vehicle" under the DUI statute?

■ On appeal, Everton claims that D.C.Code § 50–2201.05, part of the Traffic Act of 1925, which criminalizes operating a "vehicle" under the influence of alcohol, does not apply to him because although he was concededly intoxicated, the bicycle he was riding was not a "vehicle" as defined by the statute.[1] We conclude otherwise.

■ Whether a bicycle is considered a "vehicle" under D.C.Code § 50–2201.05 is a question of statutory interpretation, which we review *de novo*. *See Banks v. United States,* 955 A.2d 709, 711 (D.C. 2008). "[T]he words of a statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Thompson v. District of Columbia,* 863 A.2d 814, 817–18 (D.C. 2004) (quoting *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc)). "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

1. At trial, appellant took the stand and denied that he was intoxicated. Based on the officers' testimony, the trial judge found that he was. Appellant does not challenge that finding on appeal and concedes that the only issue presented for decision is the legal interpretation of the statute concerning coverage of bicycles.

Here, the plain meaning of the Traffic Act does not support Everton's contention that a bicycle is not a "vehicle" for purposes of the DUI statute.[2] D.C.Code § 50–2201.05, provides, in relevant part, that "[n]o person shall operate or be in physical control of *any vehicle* in the District ... [w]hile under the influence of intoxicating liquor or any drug or any combination thereof." D.C.Code §§ 50–2201.05(b)(1)(A)(i), –2201.05(b)(1)(A)(i)(II) (emphasis added). The Traffic Act defines "vehicle" as "*any appliance* moved over a highway on wheels or traction tread, including street cars, draft animals, and beasts of burden." *Id.* at § 50–2201.02(9) (emphasis added). Under the Act's clear and unambiguous language defining "vehicle," a bicycle is a "vehicle," as it is an "appliance" consisting of a metal frame mounted on two "wheels" that can move over a "highway."[3] An interpretation of the Traffic Act's definition of "vehicle" as including bicycles comports with the ordinary dictionary definition that a bicycle is a vehicle.[4]

The history of the Traffic Act also supports this interpretation. Relying on a 1926 amendment to the Traffic Act of 1925, which adopted the definition of "vehicle" that remains unchanged to this day, this court's predecessor rejected the notion that the Act "related entirely to motor vehicle traffic" and explained that the amendment was "designed to remove any possible doubt as to its all-encompassing character." *District of Columbia v. Wheeler*, 57 App. D.C. 106, 106, 17 F.2d 953, 953, (1927) (discussing Act of July 3, 1926, ch. 739, 44 Stat. 812 (1926), § 1 (currently codified at D.C.Code § 50–2201.02(9) (2001))); *see also id.* at 108, 17 F.2d at 955 (noting that the 1926 amendment "greatly enlarge[d] the common meaning of the word 'vehicle' ") (Barber, Acting Associate Judge, dissenting).

It is also apparent that the legislature distinguished between the definition of "vehicle" and the narrower category of "motor vehicle." *Compare* D.C.Code § 50–2201.02(9) (defining "vehicle") *with* D.C.Code § 50–2201.02(1) (2001) (defining "motor vehicle" as "[a]ll vehicles propelled by internal-combustion engines, electricity, or steam. The term 'motor vehicle' shall not include traction engines, road rollers, vehicles propelled only upon rails or tracks, personal mobility devices, ... or a battery-operated wheelchair when operated by a person with a disability.").

Furthermore, a comprehensive interpretation of the term "vehicle" is consistent with the intent of the Traffic Act to regulate traffic for the protection of public

**2.** Appellant refers to a number of statutes and cases from other jurisdictions in an effort to persuade us that a bicycle is not a "vehicle" for purposes of the DUI statute. Those cases are inapposite, however, as they interpret differently-worded statutes. For example, some of the statutes cited by appellant make their intent to exclude bicycles quite clear by providing that devices "moved by human power" do not come within the statutes' purview. *See, e.g., Clingenpeel v. Mun. Court for Antelope Judicial Dist.*, 108 Cal.App.3d 394, 399, 166 Cal.Rptr. 573 (1980); *People v. Schaefer*, 274 Ill.App.3d 450, 210 Ill.Dec. 968, 654 N.E.2d 267, 268 (1995).

**3.** For purposes of the Traffic Act, "a public sidewalk is part of the public highway." *Houston v. District of Columbia*, 149 A.2d 790, 792 (D.C.1959) (noting that a public sidewalk, although not designed or intended for vehicular traffic, is considered part of the public highway).

**4.** The American Heritage Dictionary of the English Language defines "bicycle" as a "vehicle consisting of a light frame mounted on two wire-spoked wheels one behind the other and having a seat, handlebars for steering, brakes, and two pedals or a small motor by which it is driven." AMERICAN HERITAGE DICTIONARY 183 (3d ed.1992).

safety. *See, e.g., Cass v. District of Columbia*, 829 A.2d 480, 485 (D.C.2003) (holding that "the suspension of driving privileges for violations of the [Traffic] Act by underage persons who possess or consume alcohol" has as "its primary objective ... traffic safety"); *Persham v. United States*, 70 App. D.C. 116, 117, 104 F.2d 249, 250 (1939) (holding that under the Traffic Act the District had the power to regulate traffic on public thoroughfares and prosecute and punish for violations). Operating a bicycle while intoxicated poses a serious threat to the safety of pedestrians and other vehicles as it increases the risk of vehicular accidents. We must look no further than the facts of this case, where appellant almost ran over a child who was walking over a crosswalk and fell off his bicycle in a heavily transited city street.

Appellant maintains, however, that if the term "vehicle" is interpreted to include bicycles, a literal application of the DUI statute prohibiting an intoxicated person from "operat[ing] or be[ing] in physical control of any vehicle in the District," D.C.Code § 50–2201.05(b)(1)(A)(i), would lead to an absurd result. According to appellant, "if an intoxicated individual walks or is holding onto the bicycle, as a pedestrian, then the intoxicated individual is still violating the statute." We do not need to decide that question in this case. Everton was not a pedestrian as he was neither walking next to his bicycle nor holding onto it. Rather, he was riding the bicycle across a public street and thus undoubtedly was "operat[ing]" the bicycle as a vehicle.[5] Therefore, he has no standing to challenge the statute based on a hypothetical application to a different situation. *See Leiss v. United States*, 364 A.2d 803, 807 (D.C.1976) ("It is a well-settled principle that one to whose conduct a statute clearly applies is not entitled to attack it on the ground that its language might be less likely to give fair warning in some other situation not before the court."), *cert. denied* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977).

Giving effect to the clear statutory language of the Traffic Act, and consistently with its purpose, we conclude that a bicycle is a "vehicle" for purposes of the DUI statute of the District of Columbia.[6] Therefore, the trial court did not err in finding Everton guilty of operating a vehicle under the influence of alcohol, in violation of D.C.Code § 50–2201.05.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

*So ordered.*

---

**5.** We have held that to be in "physical control" of a vehicle, a person must be capable of putting the vehicle into movement or preventing its movement. *See Houston*, 149 A.2d at 792 ("As long as one were physically or bodily able to assert dominion, in the sense of movement, then he has as much control over an object as he would if he were actually driving the vehicle.") (quoting *State v. Ruona*, 133 Mont. 243, 321 P.2d 615, 618 (1958); *see also Taylor v. United States*, 662 A.2d 1368, 1371 (D.C.1995) (person in parked car, with lights and engine running, apparently asleep behind the steering wheel, had "physical control" of the vehicle for purposes of DUI statute).

**6.** We, therefore, have no need to resort to the rule of lenity to resolve any ambiguity. *See Sullivan v. United States*, 990 A.2d 477, 483 n. 9 (D.C.2010); *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).